OPINION
McHUGH, Presiding Judge:
T1 The State of Utah appeals from an interlocutory order granting the defense's motion to suppress breath alcohol concentration results from an Intoxilyzer 8000 machine (Intoxilyzer). The State argues that the trial court erred in ruling that a foundational requirement for the admission of Intoxilyzer results, a fifteen-minute observation period, was not satisfied. In the alternative, the State contends that the trial court erred in excluding the test results because the fifteen-minute observation period required by State v. Vialpando, 2004 UT App 95, 89 P.3d 209, should no longer be required due to changes in equipment and technology. We reverse and remand.
BACKGROUND
12 On November 18, 2008, the Springville Police Department received a tip that an intoxicated driver was in a white car without license plates and proceeding westbound on River Bottom Road. Two patrol officers spotted a vehicle matching the description and attempted to pull it over. After a short pursuit, the vehicle pulled into the parking lot of a liquor store and stopped. As officers approached the vehicle, it started to roll back toward the officers' car. While one officer prevented the vehicle from rolling any further, the other officer instructed the driver to engage his emergency brake. After the car was stopped, the officers determined that the driver was Randall Matthew Relyea.
T3 While talking to Relyea, the officers noticed that his eyes were bloodshot and that his speech was slow and slurred, and at least one officer could smell alcohol on Relyea's breath. However, Relyea denied that he had been drinking. After performing three field sobriety tests, the officers determined that Relyea was too impaired to drive. Another officer (the Arresting Officer), who arrived at the seene during the field sobriety tests, then cuffed Relyea's hands behind his back and placed him under arrest.
T4 Following the requirements of State v. Baker, 56 Wash.2d 846, 355 P.2d 806 (1960), applied by the Utah Supreme Court in Salt Lake City v. Womack, 747 P.2d 1039 (Utah 1987), the Arresting Officer inspected Re-lyea's mouth to insure that it was free from "foreign objects." The officer made Relyea spit out chewing tobaceo and then rechecked his mouth, determining that it was empty. The Arresting Officer informed dispatch that the mouth inspection was performed at 8:07 p.m. Afterwards, the Arresting Officer transported Relyea to the police station in the backseat of a patrol car. Although he could see Relyea through his rearview mirror, the Arresting Officer admitted that he would not have noticed if Relyea "burped or regurgitated" during the drive. At 8:12 pm., the Arresting Officer and Relyea arrived at the police station. From that point forward, the Arresting Officer was able to observe Relyea, who was still handcuffed. The Arresting Officer did not recheck Relyea's mouth for foreign objects after arriving at the police station. At 8:28 p.m., the Arresting Officer administered the Intoxilyzer test. The results indicated that Relyea had a breath alcohol content of 0.237.
15 The State charged Relyea with driving under the influence of alcohol or drugs pursuant to Utah Code section 41-6a-502. See Utah Code Ann. § 41-62-502 (2010)[1] Subsequently, Relyea filed a Motion to Suppress Intoxilyzer Results, arguing that he was not adequately observed for fifteen minutes prior to the administration of the test. Specifically, Relyea asserted that the Arresting Officer would not have noticed if Relyea burped or regurgitated in the backseat of the patrol *281 car. In response, the State argued that the Arresting Officer's observation of Relyea during the twenty-one minute period between the arrest and the test was with sufficient "clarity and accuracy" to satisfy the Baker standard.[2] In reply, Relyea requested an evidentiary hearing to determine whether Relyea "burped or regurgitated between the time [the Arresting Officer] checked [his] mouth and transported him to the police station to perform the [IIntoxilyzer test."
1 6 The court granted the request and held an evidentiary hearing on June 15, 2009. At that hearing, Relyea testified that he suffered from gastroesophageal reflux disease, commonly referred to as GERD, that caused him to "belch or regurgitate up through the back of [his] throat when ... sleeping ... [and] during the day." Relyea also explained that his symptoms were aggravated by alcohol use but that he could "mask" and "control" his symptoms so that there might not be sounds or other signs that he was experiencing the symptoms. Relyea stated that while seated in the backseat of the patrol car, he "was having severe regurgitation and belching" but quickly swallowed down any residue. Relyea did not notify the Arresting Officer of his condition. Further, Relyea could not recall when exactly he experienced these symptoms or whether he was burping "while breathing on the [Intoxilyzer]." Re-lyea did testify, however, that when drinking alcohol his condition is "almost constant."
T7 On June 18, 2009, the trial court entered a Ruling and Order on Defendant's Motion to Suppress Intoxilyzer Results, granting Relyea's motion. The court reasoned that under State v. Vialipando, 2004 UT App 95, 89 P.3d 209 (applying the requirements of Baker, 355 P.2d at 809-10), the ride to the police station with Relyea in the backseat "impeded the [Arresting Officer's] powers of observation ]" because the Arresting Officer would not have noticed if Relyea was burping or regurgitating. See id. 118 (holding that the purpose of the observation period is met if three criteria are satisfied, including that the "officer's powers of observation" were not impeded). Accordingly, the court determined that the State had not established the foundation required for the admission of the Intoxilyzer results. Even without the Intoxilyzer results, however, the court determined that there was "sufficient evidence to support probable cause to go to trial."
18 In response to the court's ruling, on July 16, 2009, the State filed a Notice of Intent to Appeal and Motion for Leave to Supplement the Record. In this Motion, the State requested that the court allow the State to supplement the record with expert testimony to demonstrate that, unlike the Breathalyzer machine (Breathalyzer) that was involved in Baker, the Intoxilyzer used to test Relyea did not require a fifteen-minute observation period to ensure an accurate result. The State conceded, however, that the court was bound to follow the holding of Vialpando because that case applied the analysis of Baker to Intoxilyzers[3] The trial court scheduled an evidentiary hearing for August 10, 2009. In response, Relyea filed a motion to strike the evidentiary hearing, requesting instead that the trial court hold oral arguments on the issue of whether the State should be allowed to supplement the record. While the trial court did not strike the evidentiary hearing, it issued an order stating, "The Evidentiary Hearing scheduled for August 10, 2009, will proceed after Oral Arguments on [the] State's Motion to Supplement [the] Record if the defense motion is denied. If the defense motion is granted, the evidentiary hearing will be stricken." Thus, the trial court left open the possibility that the record would be reopened and additional evidence admitted.
*282 T9 At the August 10, 2009 hearing, the State modified its earlier position and expressly requested that the trial court reconsider its June 18, 2009 ruling, in addition to permitting the State to supplement the record. The court initially denied the State's motion to supplement the record because it was unaware of any facts or law in its original ruling that it had misconstrued. However, the trial court allowed the State to "do an offer of proof by putting on the evidence so [the State could] preserve [the evidence]."
T 10 After allowing the evidence as an offer of proof, the trial court explained its initial ruling on the Baker issue by stating, "[Re-lyea ] testified he regurgitated, and I know we put that in our findings of fact, but that doesn't really matter. What matters is the officer ... said [he] wasn't observing [Re-lyea ] during this [twenty-one-] minute [period; ] . he admitted that." (Emphasis added.) The State then proffered the following evidence through counsel:
[The Arresting Officer] took Baker at [8:07 p.m. when the Arresting Officer] was six blocks away from the police station. And according to the log from dispatch, he arrived there at the police station at [8:12 pm.] That's five minutes. From [8:12 p.m.] to [8:28 p.m.] ... that's [sixteen] minutes.... It seems to me that the Court's ruling was having to do with when he was in the vehicle, not under observation. We still have [sixteen ] minutes ... from when he left the vehicle.[4]
(Emphasis added.) Upon hearing the proffer, the trial court stated, "Now, that would be a ground for reconsideration if I misconstrued that fact." In response to Relyea's argument that the State had not presented this evidence at the prior suppression hearing, the trial court ruled that the Arresting Officer could testify as to the facts in the State's proffer as an additional "offer of proof." The court indicated, however, that it would not "change the ruling unless [the State could] show that [the court] misconstrued the record somewhere, then [the court would] be happy to change it."
11 The State called the Arresting Officer, who testified that he placed Relyea in the back of the patrol car at 8:07 p.m. and that they arrived at the police station at 8:12 p.m. After arriving at the police station, Relyea's hands were still cuffed behind his back, and the Arresting Officer "kept [his] eye on [Re-lyeal the whole time before administering the test." According to the Arresting Officer, he was within about five feet of Relyea from the time they arrived at the police station until Relyea took the Intoxilyzer test, a period of sixteen minutes. During that time, the Arresting Officer never heard or saw Relyea belch or regurgitate, nor did Relyea tell the Arresting Officer that he had belched or regurgitated. On cross-examination, the Arresting Officer admitted that he had not asked Relyea if he had burped or regurgitated while waiting at the police station before the test.
{12 Next, the State called James Brierly, an alcohol technician with the Utah Highway Patrol (the Technician). The Technician maintained and certified breath alcohol instruments and was familiar with the mechan-ies of the Breathalyzer-the machine used in Baker-and the Intoxilyzer used to test Re-lyea. The Technician testified that breath alcohol instruments attempt to measure "deep lung air," rather than mouth air, and that this was important because mouth aleo-hol is volatile and can "spike" measurements, leading to inaccurate results. The Technician noted that a fifteen-minute observation period was necessary for the older Breathalyzer in order to allow alcohol to dissipate from the mouth and to prevent erroneous results. In contrast, the Technician explained that the Intoxilyzer had a slope detector that would disallow a test if any mouth alcohol was detected, thereby preventing erroneous test results. Thus, the Technician opined that a fifteen-minute observation period was not necessary to ensure the accuracy of Intoxilyzer results, but was still good practice to avoid delays caused by a disallowed test. After the State's presentation of evidence, Relyea cross-examined the Technician but he declined the trial court's invitation to offer his own evidence. The court then continued oral argument regarding the State's *283 motion to supplement the record with the new evidence provided by the Arresting Officer and the Technician to a later date.
1 13 On November 9, 2009, oral arguments resumed. At that hearing, the State focused its argument on whether the fifteen-minute observation period required by Baker should be required for newer machines, like the Intoxilyzer used to test Relyea. The State again asked the trial court to reconsider its prior ruling in light of the additional evidence and Relyea objected. Ultimately, the trial court allowed the State to "augment the record" with the additional evidence, explaining that it was "coming in." The trial court then offered Relyea the opportunity "to put anything in the record at this point because this is really your only opportunity to bring in an expert on this ... so that the issue could be properly framed and there would be an adversarial presentation of evidence." After clarifying that the trial court still intended to exclude the Intoxilyzer results under Viai-pando, Relyea decided not to present expert testimony concerning the need for a fifteen-minute observation period or to put anything else in the record.
T14 On January 7, 2010, the trial court issued its Findings of Fact, Conclusions of Law, and Order, and included without objection the State's evidence presented at the August 10, 2009 hearing. The trial court found that Relyea was burping and regurgitating on the five-minute ride to the police station; it did not make any finding that Relyea burped at any time thereafter. Rather, the trial court found that after arriving at the police station, the Arresting Officer did not hear or see Relyea burp or regurgitate, but also did not ask Relyea whether he burped or regurgitated. Although it made these additional factual findings, the trial court did not change its earlier ruling suppressing the Intoxilyzer results. Instead, the trial court reincorporated its reasoning from the June 18, 2009 ruling, concluding that the Arresting Officer had not met the Baker observation requirement. With regard to the State's contention regarding the continuing utility of the Baker standard, the trial court held that Viaipando required a fifteen-minute observation period before In-toxilyzer results could be admitted.[5] Accordingly, it again granted Relyea's motion to suppress the Intoxilyzer results. On interlocutory appeal, the State now challenges the trial court's second ruling.
ISSUES AND STANDARDS OF REVIEW
115 On appeal, the State argues that the trial court erred in refusing to admit Intoxilyzer test results because the fifteen-minute observation period required by Viai-pando was satisfied by the Arresting Officer's continuous observation of Relyea for sixteen minutes. A trial court's determination that there was not a proper foundation for the admission of evidence will not be overturned "unless there is a showing of an abuse of discretion." Id. 118 (internal quotation marks omitted).
116 In the alternative, the State argues that the trial court erred in applying Vialpando's fifteen-minute observation requirement to Intoxilyzer test results because technological changes obviate the need for the requirement. "[Wle consider the trial court's interpretation of binding case law as presenting a question of law and review the trial court's interpretation of that law for correctness." State v. Stewart, 2011 UT App 185, ¶6, 257 P.3d 1055 (internal quotation marks omitted), cert. denied, 263 P.3d 390 (Utah 2011).
ANALYSIS
I. The State's Argument that the Arresting Officer Satisfied the Fifteen-Minute Observation Period Is Preserved
117 Before addressing whether the Baker requirements were satisfied by the *284 Arresting Officer's sixteen-minute observation, we consider whether the State properly preserved this argument. Relyea argues that the State abandoned this argument during the November 9, 2009 hearing before the trial court. "[In order to preserve an issue for appeall,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." Brookside Mobile Home Park, Ltd. v. Peebles, 2002 UT 48, ¶14, 48 P.3d 968. To ensure that an issue is properly presented before the trial court "(1) the issue must be raised in a timely fashion; (2) the issue must be specifically raised; and (8) a party must introduce supporting evidence or relevant legal authority." Id. (internal quotation marks omitted). "[OJnee trial counsel has raised an issue before the trial court, and the trial court bas considered the issue, the issue is preserved for appeal," and trial counsel does not need to raise the issue repeatedly. See id. While it is a close question, we are satisfied that the State adequately preserved this issue.
{18 On May 11, 2009, Relyea filed his motion to suppress the Intoxilyzer results. Relyea claimed that the test results were inadmissible because the Arresting Officer did not adequately observe Relyea on the ride to the police station and would not have noticed if Relyea burped or regurgitated. Nowhere in his motion and memorandum in support did Relyea assert that he, in fact, burped or regurgitated on the ride to the police station. In the State's June 1, 2009 opposition memorandum, it argued that the Baker observation period was satisfied during the entire twenty-one-minute period-3:07 pm. to 8:28 p.m. -from the time of arrest to the administration of the Intoxilyzer test. At that time, the State did not argue that there were sixteen minutes of continuous observation . after arrival at the police station. In Relyea's reply, he requested an evidentiary hearing "to present evidence regarding the issue of whether [Relyea) burped or regurgitated" on the ride to the police station. For the first time at that hearing, Relyea presented evidence that he suffered from gastroesophageal reflux disease and that he had regurgitated during transport. Based on this evidence, the trial court issued its June 18, 2009 ruling suppressing the In-toxilyzer results.
[ 19 The State responded with a motion to supplement the record. During the ensuing August 10, 2009 hearing, the State asserted both that the Arresting Officer had complied with Baker by observing Relyea for sixteen minutes after arriving at the police station and that the Baker test should be limited to Breathalyzers. With respect to the first issue, the State offered the testimony of the Arresting Officer, who testified that he and Relyea arrived at the police station at 3:12 p.m., and that he "had [Relyea] sitting on a bench with his hands behind his back{[,] and [that hel was about five feet to the west of [Relyea], directly west of [Relyea] where [he] could stand and watch him profile-wise the entire time." At the end of this hearing, the trial court deferred the argument on whether the record should actually be supplemented with this evidence, in order to allow both parties to compare the new testimony with the evidence presented at the initial suppression hearing. At the subsequent hearing on November 9, 2009, the State made several statements that Relyea argues resulted in a waiver of its argument that the Arresting Officer's sixteen-minute observation of Re-lyea after they arrived at the police station satisfied Baker. However, when viewed in the context of the State's arguments, we are not convinced that the State intended to abandon this argument or that Relyea or the trial court were convineed otherwise.
120 For instance, the State noted,
Baker addresses a [Breathalyzer] from back in 1959. That machine has changed so drastically in the years since [then] that Baker has not looked at this issue. So that's what we're asking. We don't think that you're bound by that holding. And so, therefore, you could go ahead and take a look at the evidence that we provided to the Court and find that the officer, based upon his expert testimony, even though he didn't comply with the 15 minute observation, that you could still go ahead and allow that because that evidence does not go to admissibility.
*285 (Emphasis added.) We agree with the State that this statement was an alternative argument and not a concession that the Baker observation period was, in fact, not satisfied. We interpret the State's comments as an attempt to advance its alternative argument that, even if the Baker observation period was not met, the trial court could still admit the test results because the Baker observation period is unnecessary with Intoxilyzers.
(121 Relyea also argues that the State waived its argument that the Arresting Officer complied with Baker when it responded to the trial court's statement, "[WJhat the evidence still shows is that ... Baker wasn't complied with," by conceding, "[Wle agree with that, Judge. We're okay with that." Again, however, this statement was made in the context of the State's presentation of its alternative argument that the Baker rule is not required to assure the accuracy of Intoxi-lyzer results. The court's statement that Baker was not complied with was made immediately after the State argued that the court should follow an Idaho Court of Appeals case, which held that Intoxilyzer 5000 [6] results could be admitted in the absence of a fifteen-minute observation period required for Breathalyzer results. See generally State v. Charam, 132 Idaho 341, 971 P.2d 1165, 1167-68 (1998). Earlier at the August 10, 2009 hearing, the State had presented its argument on Baker compliance. Upon completing its remarks on that point, the State moved to its alternative argument that compliance was irrelevant. Due to the context in which this statement was made and the State's unequivocal prior argument that the sixteen minutes of observation at the police station satisfied Baker, we are not convinced that the State intended to abandon its position that the Arresting Officer had complied with Baker. Instead, we view the exchange as an inartful attempt to argue in the alternative.
22 That the court and parties understood these apparent concessions were made for purposes of the alternative argument only is supported by Relyea's response,
[E ]ven though the [Arresting Officer ] testified that after he took Mr. Relyea out of the vehicle, he did observe him for [sixteen | minutes, it still doesn't cure Baker because Baker starts with a mouth check and he didn't redo the mouth check which is what happened in [Viaipando]. In [Vialpando,] the suspect regurgitated, the officer rechecked the mouth and that's when Baker restarts. He never did in our case here. The [Arresting Officer] from Mr. Relyea's case never did a recheck. So just by observing him for the [sixteen] minutes when he got out of the car still doesn't cure Baker.
(Emphasis added.) Although the State had just made the statements that Relyea now claims operate as a waiver, Relyea apparently understood at the time that the State continued to advance its argument that the Arresting Officer had complied with Baker.
23 Accordingly, where the State argued that the Arresting Officer's observation of Relyea was sufficient under Baker, and Re-lyea addressed that argument immediately prior to the court's January 7, 2010 ruling, we believe the issue was "presented to the trial court in such a way that the trial court hald] an opportunity to rule on that issue." See Brookside Mobile Home Park, Ltd. v. Peebles, 2002 UT 48, ¶14, 48 P.3d 968. Our conclusion is further supported by the fact that the trial court ruled on both issues. See State v. Taylor, 2005 UT 40, ¶7, 116 P.3d 860 (holding that an issue was preserved because the trial court had ruled on it); Arbogast Family Trust v. River Crossings, LLC, 2008 UT App 277, ¶11, 191 P.3d 39 (same), aff'd, 238 P.3d 1035 (Utah 2010). Therefore, we hold that the issue of whether the Arresting Officer satisfied Baker was adequately preserved.
II. The Trial Court Acted Within Its Discretion in Granting the State's Motion to Reopen the Evidence
124 Relyea contends that the State's expert testimony regarding the differences between Breathalyzers and Intoxi-lyzers was not properly admitted into evidence. Although we do not reach the issue of whether Intoxilyzer results should be sub *286 ject to the same foundational prerequisites as Breathalyzer results, we address the appropriateness of the trial court's decision to reopen the evidence because the dissent raises similar concerns with respect to the Arresting Officer's new testimony about Baker compliance. "[A] motion to reopen a case for the purpose of introducing further evidence is addressed to the sound discretion of the court, and ... such discretion should generally be liberally exercised in behalf of allowing the whole case to be presented." State v. Bozung, 2011 UT 2, ¶ 12, 245 P.3d 739 (internal quotation marks omitted) (citing Wasatch Oil Ref. Co. v. Wade, 92 Utah 50, 63 P.2d 1070, 1075 (1986)). This approach serves to "protect[ ] society's interest in ensuring a complete proceeding where the court considers all relevant, constitutionally obtained evidence." Id. (internal quotation marks omitted). Furthermore, the trial court is not limited to reopening the evidence to allow the introduction of newly discovered evidence but instead can admit evidence that could have been introduced during the prior hearing. See id. 118. In determining whether to reopen the evidence, however, the trial court must not exercise its power in "a capricious and arbitrary manner which produces an inequitable or unjust result." Id. T 12 (internal quotation marks omitted).
25 The Utah Supreme Court has provided "two principles to which trial courts should refer in determining whether to revisit pretrial evidentiary matters." Id. 114. "First, a district court's decision on a pretrial motion to rehear an evidentiary matter should be made in light of the totality of the cireumstances" to "ensur[e]l a complete proceeding." Id. 115. "Second, the determination of whether or not to grant a pretrial motion to rehear an evidentiary matter should include consideration of any of the nonexclusive factors" provided by the supreme court. Id. 116. These factors include "[tlhe reason the proposed evidence was not produced at the first hearing"; "[IwJlhether [an] omission was deliberate or accidental, grossly negligent or merely careless"; "[wlhether the proposed evidence was lawfully obtained"; "[wlhether the proposed evidence will have a 'substantial effect' on the court's ruling"; "[wlhether permitting the evidence will unfairly prejudice the party against whom it is being offered"; "[the experience of the prosecutor"; "[the nature of the case"; "[the timeliness of the motion"; and "[the court's strong interest in controlling its docket and avoiding piecemeal litigation." Id. 117 (third alteration in original) (additional internal quotation marks omitted). In this case, the trial court had substantial discretion in determining whether to admit new evidence regarding Baker compliance, even though the State could have presented this evidence at an earlier hearing. See Bo-sung, 2011 UT 2, ¶13, 245 P.3d 739. In light of the two principles articulated by the supreme court, the trial court acted well within its discretion.
126 First, in considering the totality of the cireumstances, admission of the time of arrival at the police station allowed the trial court to gain a more complete description of the events leading to Relyea's Intoxilyzer test. See id. 115. The trial court indicated that evidence of the time of arrival "would be a ground for reconsideration if [the court] misconstrued that fact." Because the time of arrival at the station is a critical fact, the totality of the circumstances warranted the admission of this evidence "to ensur[e] a complete proceeding where the court [could] consider[] all relevant, constitutionally obtained evidence." Id. 112.
1 27 The nonexclusive factors listed by the supreme court also weigh in favor of admission. See id. 117. Although the State could have introduced evidence of the time of arrival at the police station prior to the trial court's June 18 ruling, its failure to do so was not strategic or otherwise intended to disadvantage Relyea. See generally Stewart v. State, 151 Md.App. 425, 827 A.2d 850, 873 (2003) (recognizing it is not an abuse of discretion to reopen the evidence where "[t]he State [did] not attempt[] to deliberately withhold evidence in order to present it at a later time and gain an unfair advantage"), cited with approval in Bozung, 2011 UT 2, ¶17, 245 P3d 739; Commonwealth v. Branch, 292 Pa.Super. 425, 437 A.2d 748, T5l (1981) ("[This court has ... permitted the reopening of a suppression hearing record in order to permit the introduction of evidence *287 inadvertently omitted by the prosecution."), cited with approval in Bozung, 2011 UT 2, 1 17, 245 P.3d 739. There is also no suggestion that Relyea was prejudiced by the introduction of this evidence because Relyea was able to cross-examine the Arresting Officer and to introduce his own evidence if he desired. See generally Bozung, 2011 UT 2, 1 17, 245 P.3d 739. Additionally, admission of this evidence could have a "substantial effect" on the court's ruling and, in our view, is outcome determinative. See generally 1d. Therefore, we hold that the trial court did not exceed its broad discretion in reopening the evidence to admit the Arresting Officer's testimony about the time of arrival at the police station and his subsequent observation of Relyea.
III. The Arresting Officer's Sixteen-Minute Continuous Observation of Relyea Satisfies Baker and Vialpando
128 The State argues that the Arresting Officer satisfied the fifteen-minute observation period required by Baker and Vialpando and that the trial court erred in ruling that the results of the Intoxilyzer test were inadmissible. Under the facts present here, we agree.
29 Utah courts have adopted three foundational requirements to determine whether the results of a Breathalyzer test are admissible into evidence. See In re Oaks, 571 P.2d 1364, 1367 (Utah 1977) (Maughan, J., dissenting) (citing State v. Baker, 56 Wash.2d 846, 355 P.2d 806, 809-10 (1960)); State v. Vialpando, 2004 UT App 95, 114, 89 P.3d 209. In Viaipando, those requirements were applied to the results of an Intoxilyzer, without analysis of whether the rationale was equally applicable. See Vialpando, 2004 UT App 95, ¶14 13-19, 89 P.3d 209; see also supra note 5. First, the machine must have "been properly checked by a trained technician, and ... in proper working condition at the time of the test." See Vialpando, 2004 UT App 95, T 14, 89 P.3d 209. Second, the test must be "administered correctly by a qualified operator." Id. Third, a police officer must have "observed the defendant during the fifteen minutes immediately preceding the test to ensure that the defendant introduced nothing into his or her mouth during that time." Id.
130 The only requirement at issue here is whether the fifteen-minute observation requirement was satisfied. The State concedes that the Arresting Officer was not "in a position to adequately monitor [Relyea] for regurgitation" and did not satisfy the above requirements on the five-minute drive from the seene of the arrest to the police station. However, the State contends that the Arresting Officer satisfied this requirement by continuously observing Relyea for sixteen minutes after arriving at the police station. According to Relyea, because his mouth was not rechecked for foreign substances upon arrival at the police station, the Vialpando requirements were not satisfied.[7] Thus, despite the dissent's concern with Re-lyea's due process rights, the issue he asserts on appeal is quite narrow. That issue is whether a recheck of the suspect's mouth is required after a period of interrupted observation when the purpose of the observation period is otherwise satisfied under Viaipan-do's three-prong test. We conclude that it is not.
131 A mouth check ensures that a suspect's mouth is clear of foreign objects prior to the test, however, nothing in Viaipando dictates repeated checking of the suspect's mouth in every instance where the officer's observation of the suspect is interrupted. Under Vialpando, " 'the level of surveillance must be such as could reasonably be expected to' ensure that no alcohol has been introduced into the suspect's mouth, 'from the outside or by belching or regurgitation," during the entire observation period." Id. ¶18 (quoting State v. Carson, 133 Idaho 451, 988 P.2d 225, 227 (App.1999)). Accordingly, if after an initial check of the mouth, the officer's continuous observation of the suspect is interrupted, a recheck is not required where *288 "the suspect had no opportunity to ingest or regurgitate anything" during the period of interrupted observation. See id.
132 In this case, the cireumstances indicate that no foreign substances were introduced into Relyea's mouth after the initial mouth check. Relyea was placed in the patrol car with his hands cuffed behind his back, thereby preventing him from introducing any foreign objects into his mouth. See Vialpando, 2004 UT App 95, 119, 89 P.3d 209. Although Relyea did "regurgitate[ ] into his throat" on the ride to the police station, he testified that he quickly swallowed down any residue prior to arriving at the police station. And Relyea does not claim that any other foreign substances were introduced into his mouth after the initial mouth check. Because Relyea had no opportunity to introduce foreign substances into his mouth and he admits that he quickly swallowed down any residue from the regurgitation into the "back of his throat" on the ride to the police station, a subsequent check of Relyea's mouth after arriving at the police station was unnecessary.
33 Thus, the remaining inquiry is whether the purpose of the observation period was satisfied during the sixteen minutes at the police station before the test. In Viaipando, this court explained,
The purpose of the observation period is to ensure that a defendant does not introduce anything into his mouth that might taint the test results. While this requirement serves to ensure that the defendant places no food, drink, or smoke into his mouth during the observation period, its most important function is to ensure that any alcohol in a suspect's mouth is absorbed into the system before the test is administered.
See id. 118 (citing State v. Gardner, 1998-NMCA-160, 112, 126 NM. 125, 967 P.2d 465).
The purpose of the observation period is satisfied if ... (1) the suspect was in the officer's presence for the entire period[,] (2) it is clear that the suspect had no opportunity to ingest or regurgitate anything during the minimum observation period[,] and (8) nothing impeded the officer's powers of observation[ ] during the observation period.
Id.
T 34 The first requirement is satisfied here because Relyea did not "leave [the Arresting Officer's] side" after arriving at the police station. Accordingly, Relyea was in the Arresting Officer's presence throughout the entire sixteen-minute period prior to the administration of the test.
135 With regard to the second requirement, Relyea's hands were secured behind his back at the time of arrest and no foreign substances were in his mouth at that time. He remained handcuffed thereafter and had no opportunity to ingest or regurgitate anything during the minimum observation period. See Vialpando, 2004 UT App 95, 1 19, 89 P.3d 209 (noting that the suspect was seated in the front seat of a patrol car with his "hands handcuffed behind his back, preventing [the suspect] from placing anything in his mouth"). While the defendant in Viaipando informed the officer when he vomited, and the officer checked the defendant's mouth after each occurrence to ensure that the defendant's mouth "was clear of foreign matter," see id. M 15-16, we are convinced that the purposes of Baker were likewise satisfied in this case.
136 After the mouth check, Relyea was placed in the police car with his hands secured behind his back. Thus, even if the observation of Relyea during transport was not sufficient to satisfy Baker, the cireum-stances were such that Relyea had no opportunity to introduce foreign matter into his mouth. Onee they arrived at the police station, Relyea remained handcuffed and was within five feet of the Arresting Officer during the entire observation period. The Arresting Officer, who was also able to observe Relyea both visually and aurally, did not hear Relyea burp or regurgitate during the observation period. See Viaipando, 2004 UT App 95, 19, 89 P.3d 209 ("[The suspect] sat next to the trooper for the entire fifteen-minute period, and during that time the trooper monitored, both visually and aurally, to ensure that [the suspect's] mouth remained clear."). Furthermore, the trial court did not *289 find that he burped or regurgitated after arriving at the police station and Relyea could not recall whether he did so. And while Relyea testified that he regurgitated during transport, he also indicated that it reached only the back of his throat and that he immediately swallowed the residue. Under these facts, Relyea had no opportunity to place any foreign substances in his mouth after the initial mouth check.
137 The third Viaipando requirement is also satisfied because the Arresting Officer's power of observation was not hindered during the observation period. Al though the Arresting Officer was preparing the Intoxilyzer for operation and did not keep a constant fixed gaze on Relyea, Relyea was "sitting handcuffed in front of him" and the Arresting Officer "was able to look at [Relyeal, look at the sereen, [and] look back at [Relyea]." The "undivided attention of the observing officer is not required," and officers may perform other tasks so long as they are still monitoring the suspect. See id. €18. The Arresting Officer was simultaneously able to focus on setting up the Intox-ilyzer machine and to observe Relyea for sixteen continuous minutes, with no other distractions interrupting his observation.
138 Because all three prongs under Vialpando are satisfied, the State has established "a reasonable belief that [Relyea's] mouth was clear for the entire observation period." See id. 119. Therefore, we "conclude that the purpose of the observation period was satisfied and that the [IJntoxilyzer results were reliable." Id. In reaching the opposite conclusion, the trial court considered only the twenty-one-minute period that included the five-minute ride to the police station, presumably on the assumption that a second mouth check was required upon arrival. Under the facts present here, we con-
clude that it was not and that, therefore, the trial court exceeded its discretion by failing to consider whether the purposes of Baker were satisfied during the sixteen-minute continuous observation by the Arresting Officer that began upon arrival at the police station. Accordingly, we reverse the trial court's ruling suppressing the Intoxilyzer results and remand for further proceedings.[8]
IV. The Admission of Additional Evidence Did Not Violate Relyea's Due Process Rights
189 According to the dissent, the trial court violated Relyea's due process rights when it allowed the State to augment the record because the shifting purpose of the hearings made the admission of the evidence fundamentally unfair. See infre 147. While we agree that the purpose of the hearings conducted by the trial court after its initial June 18, 2009 ruling evolved, we are not convinced that Relyea's due process rights were violated as a result.
40 Relyea had both notice and an opportunity to be heard on the Baker compliance issue. First, the trial court sent written notice to both parties that the August 10, 2009 hearing would address whether to allow the State to supplement the record, putting Relyea on notice that the trial court might do so. While the State's initial insistence that it was not asking the trial court to reconsider its prior ruling may have misled Relyea, the State expressly asserted a contrary position at the start of the August 10, 2009 hearing. Likewise, although the trial court described the evidence as an "offer of proof," the parties were on notice that the issue before the court was whether the State would be allowed to supplement the record with that evidence. Furthermore, the trial court al *290 lowed Relyea to cross-examine the State's witnesses and provided Relyea the opportunity to present his own evidence. After allowing the State's witnesses to testify, the trial court specifically notified Relyea that he was free to present "anything else" he wanted. Even when Relyea declined this invitation, the trial court deferred final argument on whether it would accept the State's new evidence or reconsider its original ruling on the motion to suppress to a hearing scheduled for November 9, 2009.[9]
[ 41 At the continuation of the hearing, the State asked the trial court "to reconsider its prior ruling," "taking into account all the supplemental evidence that we [presented]." Before deciding whether to do so, the trial court stated that Relyea "could certainly present any evidence [he] wanted] to the contrary." Relyea decided not to present any contrary evidence or to request additional time to do so. The trial judge then ruled, "I'm going to allow this evidence [the testimony from the Technician and Arresting Officer] to be considered-well, I'm going to allow the State to augment the record is what I should say because this is mew evidence that's coming im .... I'm allowing the record to be augmented." (Emphasis added.) The trial court's statement leaves no doubt that the evidence was admitted as part of the evidentiary record and not simply as a non-evidentiary offer of proof. Immediately thereafter, the trial court offered Relyea another opportunity to put on "anything" or to obtain an expert.
142 Only after Relyea rejected that last opportunity to be heard did the trial court enter its findings of fact based on all of the evidence admitted before and after its initial ruling. Despite its consideration of the additional evidence, the trial court reaffirmed its holding that the Intoxilyzer results were inadmissible under Viaipando, rejecting the State's argument that the observation requirement was unnecessary and that it had been met. Based on this record, we do not agree with the dissent that "neither the parties nor the trial court had a firm understanding of what was happening with these proceedings." See infra 1 52.
148 The trial court has considerable discretion in expanding the purpose of a hearing beyond the scope of the initial request as long as doing so is not arbitrary and capricious and does not lead to "an inequitable or unjust result." See State v. Bozung, 2011 UT 2, ¶12, 245 P.3d 739 ("Indeed, we have long held that [a] motion to reopen a case for the purpose of introducing further evidence is addressed to the sound discretion of the court, and that such discretion should generally be liberally exercised in behalf of allowing the whole case to be presented." (alteration in original) (internal quotation marks omitted)). Here, each time the focus of the hearings expanded, the trial court afforded Relyea an opportunity to be heard after notice of that shift in purpose. See generally Zinermon v. Burch, 494 U.S. 113, 126, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) ("[A due process] violation ... is not complete when the deprivation occurs; it is not complete unless and until the [court] fails to provide due process."). We are simply not convinced that a defendant's choice not to avail himself of the process offered constitutes a violation of his due process rights. Instead, we conclude that Relyea was provided appropriate due process. See generally Chen v. Stewart, 2004 UT 82, ¶68, 100 P.3d 1177 (noting that the level of due process required "may vary from situation to situation," depending on the cireamstances).
1 44 Additionally, although Relyea contests the admission of the Technician's expert testimony, he does not argue that the Arresting Officer's August 10, 2009 testimony was improperly admitted. Relyea actually incorporates that testimony into his brief on appeal, noting that "[the officer and Relyea arrived at the police station at 3:12 p.m.," without any indication that the inclusion of this evidence in the trial court's findings was unfair or done without adequate notice or opportunity to be heard. Instead, Relyea argues *291 that Baker requires a mouth check whenever an officer's observation is interrupted, irrespective of how much time passes between the interruption and the administration of the Intoxilyzer test. Contrary to the dissent's contention that our ruling is based on an expectation that Relyea "should have put on more evidence pertaining to the Baker compliance issue or challenged the State's offerings on Baker compliance," see infra T 52, we expect neither. Our decision today is based on our disagreement with the only argument Relyea raises on this issue, which is that the Arresting Officer was required to recheck Relyea's mouth in order to rely upon the sixteen minutes of continuous observation at the police station. Accordingly, we do not find the dissent's contention that the admission of this evidence is "fundamentally unfair and violate[d] Relyea's due process rights" persuasive. See infroe 147. Indeed, this is an argument that is not advanced by Relyea.
CONCLUSION
1] 45 The Arresting Officer's continuous observation of Relyea for sixteen minutes satisfied the requirements of State v. Vialpando, 2004 UT App 95, 89 P.3d 209. Accordingly, the trial court's order suppressing the Intoxi-lyzer results is reversed and the case is remanded for further proceedings.
1 46 I CONCUR: STEPHEN L. ROTH, Judge.

. Because the material provisions of the statute have not changed, we cite the current version of the Utah Code Annotated for the convenience of the reader.

. Although it was initially assumed that the observation period was twenty-two minutes, it was later determined that only twenty-one minutes passed between Relyea's arrest and the administration of the Intoxilyzer test. Because this one-minute time difference does not affect our analysis, all references to the time have been made uniform to avoid confusion.

. In this motion, the State incorrectly indicated that Salt Lake City v. Womack, 747 P.2d 1039 (Utah 1987), also applied the analysis of State v. Baker, 56 Wash.2d 846, 355 P.2d 806, 809-10 (1960), to Intoxilyzers. However, the Womack decision actually involved test results from Breathalyzers. Id. at 1040-42.

4. The times mentioned in this quote were changed from military time for the reader's convenience and to correct the initial confusion about the time mentioned supra note 2.

. While this court's decision in State v. Vialpan-do, 2004 UT App 95, 89 P.3d 209, assumes that Baker's fifteen-minute observation requirement for Breathalyzers applies equally to Intoxilyzers, there is no indication in the opinion that the differences between the two technologies were brought to the Via/pando court's attention. See Vialpando, 2004 UT App 95, 413-19, 89 P.3d 209. In fact, the Vialpando court appears to have used the terms Breathalyzer and Intoxilyzer interchangeably. For instance, the court parenthetically described the 1960 Baker decision as "articulating foundation elements for [IJntoxilyzer tests." See id. 114. However, the Baker decision addressed the foundation requirements for Breathalyzers, not Intoxilyzers. See Baker, 355 P.2d at 809.

. The Intoxilyzer 5000 is an earlier model of the Intoxilyzer 8000 used to test Relyea.

. Relyea does not contest that the Arresting Officer's observation was adequate after arriving at the police station. Relyea's brief states, "When they arrived at [the] station and the officer began to observe Relyea in a manner sufficient to ensure nothing new was introduced into Relyea's mouth [,] the [Arresting Officer] failed to check to ensure it was free from any foreign matter." (Emphasis added.)

. Because we conclude that the requirements of Vialpando were satisfied, we need not consider whether a fifteen-minute observation period, like required to assure the accuracy of Breathalyzer results, is also necessary before the results of an Intoxilyzer test can be admitted. Compare State v. Charan, 132 Idaho 341, 971 P.2d 1165, 1167-68 (App.1998) (holding that even though a fif teen-minute observation period was not satisfied, a proper foundation for admission of Intoxilyzer 5000 results was met when an expert testified that the observation period is "not really necessary to ensure accurate test[ ]" results, but noting that whether foundational standards are satisfied must be determined on a case-by-case basis), with Michael P. Hlastala, The Slope Detector Does Not Always Detect the Presence of Mouth Alcohol, Champion Mag., March 2006, available at http:// www.nacdl.org/Champion.aspx?id=4599 (noting inadequacies in slope detectors and advocating for duplicate tests fifteen minutes apart).

. Although the dissent refers to the August 2009 and November 2009 hearings as the "Offer of Proof Proceedings," see infra 147, the issue before the trial court and the notice to the parties in both instances, indicated that the issue to be decided was whether the State's evidence would be accepted as a supplement to the record.