2026 UT App 77

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
NATHAN MONTGOMERY,
Appellant.

Opinion
No. 20241296-CA
Filed May 14, 2026

Third District Court, Salt Lake Department
The Honorable James Blanch
No. 245900218

Dain Smoland, Attorney for Appellant

Simarjit S. Gill and Marc Douglas Fiaui,
Attorneys for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

ORME, Judge:

¶1　Nathan Montgomery appeals the district court's denial of his motion in limine to exclude the results of his breath alcohol test. Among other things, he argues that the test results were unreliable because the officer who administered the test (Officer) failed to first check Montgomery's mouth for anything that might affect the results. We agree that mouth checks are critical to ensuring the reliability of breath alcohol test results. Accordingly, we reverse the denial of Montgomery's motion in limine and remand the matter to the district court for further proceedings.

BACKGROUND

¶2    The State charged Montgomery with one count of driving under the influence of alcohol for the second time in ten years (the DUI charge), a class A misdemeanor, and one count of failure to observe a barricade, a class B misdemeanor. According to the probable cause statement, Officer initiated a stop on Montgomery's car after he observed Montgomery drive around a police barricade on a highway. Upon approaching the vehicle, Officer "detected a strong odor of alcohol" and he observed that Montgomery's "eyes were blood-shot" and that "he was slurring his words." A field sobriety test, which Montgomery began but refused to complete, also showed signs of impairment.

¶3    Officer took Montogomery to the police station where, after some discussion, Mongomery agreed to submit to a breath alcohol test. Following an observation period of over 30 minutes, Officer administered the test. Officer's body camera, which Officer placed on the table facing Montgomery, recorded the entirety of the observation period and the administration of the test. Montgomery's breath alcohol level was measured at 0.21—well above the 0.05 legal threshold.

¶4    After being bound over for trial, Montgomery filed a motion in limine to exclude the results of the breath alcohol test on the rationale advanced in *State v. Baker*, 355 P.2d 806 (Wash. 1960) (en banc) (the *Baker* motion).[1] He argued that the test results were unreliable because (1) Officer did not check his mouth at the beginning of the required observation period immediately

---

1. Montgomery also filed a motion to suppress the test results on the ground that his consent to the test was coerced, which the district court also denied. Because we do not reach this issue on appeal, *see infra* note 2, we do not recount the facts relevant to that issue.

preceding the test and (2) Officer did not properly observe him during the observation period.

¶5 Because Officer failed to appear at the first scheduled evidentiary hearing on the *Baker* motion, the district court continued the hearing until the following week. But after Officer was again unavailable to appear in person at the continued hearing, and after Montgomery objected to Officer appearing virtually, the State stipulated, for purposes of the *Baker* motion, that Officer "did not check Mr. Montgomery's mouth and left the room during the observation period." But in its later written opposition to the *Baker* motion, the State apparently disregarded the latter portion of its stipulation. Instead, citing footage from Officer's body camera, which the State also stipulated to the court watching "off calendar," the State asserted that Officer never exited the room during the entirety of the observation period.

¶6 At a subsequent hearing, after discussing relevant caselaw, the district court concluded that although a mouth check was not strictly "required," "the absence of a mouth check, depending on the facts and circumstances, could prevent the State from showing by a preponderance of the evidence that there wasn't something in the mouth during the observation period." The court noted that although "there was not strictly speaking a mouth check in the sense that [Officer] . . . took a flashlight and looked in Mr. Montgomery's mouth," "the entirety of the observation period was captured on" "over 30 minutes" of "high quality" video with "very good" audio. And the court ultimately ruled that based on the "speech and the interaction" between Officer and Montgomery throughout the observation period, there was "other evidence to conclude that [Montgomery's] mouth was clear during the *Baker* observation period."

¶7 As for Montgomery's argument that Officer did not properly observe him, the court agreed with the State's written opposition, noting that "[t]he door in and out of the room is

visible in the video" and "[i]t didn't look like [Officer] left the room." The court further stated that even assuming, for the sake of argument, that Officer did not properly observe Montgomery, the court nevertheless remained confident "in the validity of the observation period" because the entirety of the observation period "was captured on . . . high quality audio and video." Accordingly, the court denied the *Baker* motion.

¶8 Montgomery subsequently entered a conditional plea of no contest to the DUI charge, reserving his right to appeal the denial of the *Baker* motion. *See* Utah R. Crim. P. 11(j); *State v. Sery*, 758 P.2d 935, 937–39 (Utah Ct. App. 1988). The failure to observe a barricade charge was dismissed.

## ISSUE AND STANDARDS OF REVIEW

¶9 On appeal, Montgomery challenges the denial of the *Baker* motion that sought to exclude the results of the breath alcohol test based on Officer's failure to perform an initial mouth check.[2] Generally, we review "a district court's decision to admit or exclude evidence" for an "abuse of discretion." *State v. Green*, 2023 UT 10, ¶ 43, 532 P.3d 930 (quotation simplified). *See State v. Vialpando*, 2004 UT App 95, ¶ 13, 89 P.3d 209 ("A trial court's determination that there was a proper foundation for the

---

2. Montgomery also argues that the district court erred in denying the *Baker* motion because it "substituted its own 'presence' and its own 'powers of observation' for [Officer's] to reach the ultimate conclusion that 'Mr. Montgomery's mouth was clear' during the observation period." He further challenges the court's denial of his motion to suppress the test results on coercion grounds, *see supra* note 1, which issue he also reserved the right to appeal in the conditional plea agreement. But because we conclude that the results of the breath alcohol test were inadmissible due to Officer's failure to perform a mouth check and reverse on that ground, we have no need to address these other issues.

admission of evidence will not be overturned unless there is a showing of an abuse of discretion.") (quotation simplified). But because district courts "do not have discretion to misapply the law," *State v. De La Rosa*, 2019 UT App 110, ¶ 4, 445 P.3d 955 (quotation simplified), "whether the district court applied the proper legal standard in assessing the admissibility of evidence is a question of law that we review for correctness," *Green*, 2023 UT 10, ¶ 43 (quotation simplified).

## ANALYSIS

¶10    In challenging the denial of the *Baker* motion, Montgomery argues that the district court committed legal error when it concluded that the results of his breath alcohol test were reliable despite the lack of a mouth check. We agree and hold that a mouth check is a foundational requirement for the admissibility of breath alcohol tests.

¶11    In Utah, the admissibility of a breath alcohol test result is contingent on the satisfaction of three foundational requirements originally derived from *State v. Baker*, 355 P.2d 806 (Wash. 1960) (en banc). *See State v. Relyea*, 2012 UT App 55, ¶ 29, 288 P.3d 278. To establish the reliability of breath alcohol test results, the State must show that

> (1) the . . . machine had been properly checked by a trained technician, and that the machine was in proper working condition at the time of the test; (2) the test was administered correctly by a qualified operator; and (3) a police officer observed the defendant during the fifteen minutes immediately preceding the test to ensure that the defendant introduced nothing into his or her mouth during that time.

*State v. Vialpando*, 2004 UT App 95, ¶ 14, 89 P.3d 209. *See Baker*, 355 P.2d at 809–10. At issue here is the third requirement.[3]

¶12 Under *Baker*, an officer is required to ensure "that the subject had nothing in his mouth at the time of the test and that he had taken no food or drink within fifteen minutes prior to taking the test." 355 P.2d at 810. The purpose of the 15-minute observation period is to allow any residual alcohol in the mouth to be absorbed into the system and to prevent the introduction of foreign matter into the mouth that could taint the results, either through ingestion or regurgitation. *See id.* at 811; *Vialpando*, 2004 UT App 95, ¶¶ 14, 18.

---

3. Pursuant to statutory directive to "establish standards for the administration and interpretation of chemical analysis of a person's breath or oral fluids, including standards of training," Utah Code Ann. § 41-6a-515(1) (LexisNexis 2024), the commissioner of the Department of Public Safety has adopted a regulatory framework for breath alcohol testing in Utah, *see* Utah Admin. Code R714-500-1 to -13. *See also* Utah Code Ann. § 41-6a-515(3) (stating that when the commissioner's standards and other conditions are satisfied, the test results carry a presumption of validity and no further foundation is required). Those administrative rules specifically address the first two foundational requirements stated in *State v. Vialpando*, 2004 UT App 95, ¶ 14, 89 P.3d 209, providing extensive directives for the certification of the instruments and the certification and training of operators and technicians. *See* Utah Admin. Code R714-500-6, -8, -9. But the rules are largely silent on the process of administering such tests, *see* Utah Code Ann. § 41-6a-515(1) (directing the adoption of standards "for the administration" of breath alcohol tests), which process encompasses the third foundational requirement stated in *Vialpando*. As discussed below, in Utah this third requirement has been developed through caselaw.

¶13 The legal standards governing the observation period have been developed in two key Utah cases: *Vialpando* and *Relyea*. First, in *Vialpando*, after the defendant failed a series of field sobriety tests, the arresting officer drove the defendant, who was seated in the front seat next to the officer, back to the police station to perform a breath alcohol test. 2004 UT App 95, ¶ 4. During the drive, the officer pulled over to allow the defendant to vomit, following which the officer checked the defendant's mouth with a flashlight "to ensure that it was clear of foreign matter." *Id.* ¶¶ 15–16. At the station, during the observation period, the officer prepared the testing machine and administered the test after 15 minutes had passed. *Id.* ¶¶ 5, 16. On appeal, the defendant assailed the quality of the officer's observation. *Id.* ¶ 18. This court held that an officer is not required to give the suspect his "undivided attention" during the observation period. *Id.* Rather, the observation requirement is satisfied if three criteria are met: (1) the suspect remains "in the officer's presence for the entire period," (2) the suspect has "no opportunity to ingest or regurgitate anything" during that time, and (3) the officer's ability to observe remains unimpeded throughout the period. *Id.* And this court concluded that the circumstances of that case, which included a mouth check, supported "a reasonable belief that [the defendant's] mouth was clear for the entire observation period." *Id.* ¶ 19.

¶14 Next, in *Relyea*, this court clarified that an initial mouth check "ensures that a suspect's mouth is clear of foreign objects prior to the test." 2012 UT App 55, ¶ 31. In that case, the arresting officer performed a mouth check on the defendant. *Id.* ¶ 4. After instructing the defendant to spit out some chewing tobacco, the officer rechecked his mouth, ensuring it was empty. *Id.* But during the five-minute drive to the police station, the officer was unable to properly observe the defendant, who was seated in the back seat of the patrol car. *Id.* The officer acknowledged he would not have known if the defendant had belched or regurgitated anything during that time. *Id.* After arriving at the station, the

officer observed the defendant for 16 minutes before administering the breath alcohol test. *Id.* On appeal, the defendant challenged the admissibility of the test results, arguing that the officer failed to perform a recheck of his mouth after arriving at the station. *Id.* ¶ 30 & n.7. This court rejected that argument, holding that "*if after an initial check of the mouth*, the officer's continuous observation of the suspect is interrupted, a recheck is not required where the suspect had no opportunity to ingest or regurgitate anything during the period of interrupted observation."[4] *Id.* ¶ 31 (emphasis added). After concluding that this standard was satisfied and a *recheck* of the mouth was not required in that case, *id.* ¶ 32, this court next addressed whether the three criteria for observation periods were satisfied during the 16-minute observation period at the station, *id.* ¶ 33, ultimately concluding that they had been satisfied, *id.* ¶ 38.

¶15 When viewed together, *Vialpando* and *Relyea* establish that an initial mouth check is required to satisfy the third foundational requirement for admissibility of breath alcohol test results. *See Vialpando*, 2004 UT App 95, ¶ 14; *supra* ¶ 11. Indeed, all three criteria for the 15-minute observation requirement, *see Vialpando*, 2004 UT App 95, ¶ 18; *supra* ¶ 13, are necessarily undermined if the officer fails to establish that the suspect's mouth is empty to begin with. Further, *Baker's* Washington progeny has likewise expressly required an initial mouth check, concluding that both the mouth check and observation period are "integral steps" in

---

4. The defendant later testified at an evidentiary hearing that while in the back seat, a flare up of a medical condition caused him to regurgitate, but only into "the back of his throat." *State v. Relyea*, 2012 UT App 55, ¶¶ 6, 32, 36, 288 P.3d 278 (quotation simplified). Given, among other things, the defendant's acknowledgement "that he quickly swallowed down any residue from the regurgitation" such that it did not reach his mouth, this court held that "a subsequent check of [his] mouth after arriving at the police station was unnecessary." *Id.* ¶¶ 32, 36.

ensuring the reliability of breath alcohol tests. *See State v. Trevino*, 903 P.2d 447, 453–54 (Wash. 1995).[5]

¶16    For these reasons, a mouth check is an essential step in ensuring that a suspect's mouth is clear of anything that might taint the results of a breath alcohol test.[6] The district court therefore erred in denying the *Baker* motion.

## CONCLUSION

¶17    Because Officer failed to perform a mouth check prior to the observation period, the district court erred as a matter of law when it denied the *Baker* motion seeking to exclude the results of Montgomery's breath alcohol test. Accordingly, we reverse Montgomery's conviction on the DUI charge and remand the matter for further proceedings consistent with this opinion.

———————

5. We note that in reaching this conclusion, the *Trevino* court cited an administrative rule that Washington State had adopted since *Baker*. *See State v. Trevino*, 903 P.2d 447, 454 (Wash. 1995) (citing Wash. Admin. Code § 448-13-040). As discussed in note 3 above, Utah's administrative rules are largely silent on the process of administering breath alcohol tests.

6. We recognize that when our Supreme Court first adopted the general 15-minute observation period from *Baker*, it affirmed a DUI conviction where the defendant had been continuously observed for 45 minutes by the officer who administered the breathalyzer test—three times the amount *Baker* requires—and adjudged that observation period "clearly adequate to render the breathalyzer result reliable," without any mention of a physical check of the defendant's mouth. *Salt Lake City v. Womack*, 747 P.2d 1039, 1041 (Utah 1987). But it was not until the decisions in *Vialpando* and *Relyea* that the precise legal contours of the observation period were articulated and developed.