971 P.2d 1165

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Ankur CHARAN, Defendant–Appellant.**

No. 24436.

Court of Appeals of Idaho.

Dec. 3, 1998.

Review Denied Feb. 25, 1999.

Nevin, Herzfeld & Benjamin, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Alan G. Lance, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent. Kenneth K. Jorgensen argued.

LANSING, Chief Judge.

Ankur Charan appeals from his judgment of conviction for driving under the influence of alcohol. He challenges the denial of his motion to exclude evidence of a breath alcohol concentration (BAC) test. Because there was sufficient evidentiary foundation for admission of the test, we affirm.

## FACTS AND PROCEDURE

Boise Police Officer Snyder stopped Ankur Charan's vehicle on suspicion of driving under the influence. Officer Snyder transported Charan to the police station where he administered a BAC test using the Intoxilyzer 5000. The test indicated alcohol concentrations in two breath samples of .15 and .15, well over the legal limit of .10, I.C. § 18–8004(1)(a) (1994).[1] Charan was then charged with driving under the influence, I.C. § 18–8004.

Charan moved to exclude the BAC results from evidence on the ground that Officer Snyder did not follow the test administration

---

**1.** This statute has since been amended to reduce the legal limit to .08. 1997 Idaho Sess. Laws, ch. 158, § 1.

procedures prescribed by the Idaho Department of Law Enforcement in the Operator's Training Manual for the Intoxilyzer 5000. He argued that the officer did not observe Charan for fifteen minutes before administering the test, as required by the manual, in order to determine that Charan had not burped, vomited or ingested anything shortly before the test.

At the hearing on the motion to suppress, Officer Snyder testified that during the fifteen-minute waiting period he was about nine or ten feet from Charan, doing paperwork, and that he could see Charan out of his peripheral vision. During the waiting period, another officer brought a suspect into the room, which caused some commotion and may have blocked Officer Snyder's view of Charan for "seconds," but Snyder testified that he was able to observe Charan "for the most part."

After hearing the evidence, the magistrate denied the motion to exclude the BAC test, concluding that the fifteen-minute observation requirement had been "substantially complied with." Charan then pleaded guilty, reserving his right to appeal the denial of his motion. On the intermediate appeal, the district court affirmed the magistrate's decision, but on a basis different from that stated by the magistrate. The district court relied upon the expert testimony of Officer William Bones,[2] who testified about the operation of the Intoxilyzer 5000. He stated that if a test subject brings alcohol into the mouth during the fifteen-minute observation period, as by burping or vomiting, the Intoxilyzer 5000 is designed to indicate an invalid sample, requiring the tester to begin the fifteen-minute waiting period anew. Because the machine did not reject Charan's breath samples as

invalid, Officer Bones was of the opinion that Charan's test was reliable. Based on this testimony, the district court held that the test results were admissible because the State had laid an adequate foundation showing the test's reliability even if Officer Snyder did not comply with observation procedures as directed in the Operator's Training Manual.

## ANALYSIS

On appeal to this Court, Charan challenges the rulings of both the magistrate and the district court regarding the admissibility of the BAC test. He points out that under I.C. § 18-8004(4) the analysis of breath to determine the alcohol concentration is to be performed by a method approved by the Idaho Department of Law Enforcement (DLE).[3] The DLE has authorized use of the Intoxilyzer 5000 and has set out the approved method of administering breath tests with that equipment in an Operator's Training Manual for the Intoxilyzer 5000. This manual includes a directive that the equipment operator "observe the subject for 15 minutes" before administering the test, during which time "the subject may not smoke, consume alcohol, belch, vomit, use chewing tobacco, or have any other substance in the mouth." Charan contends that the magistrate was incorrect in finding that Officer Snyder complied with this requirement that he "observe" Charan for fifteen minutes before administering the BAC test. Charan also asserts that the district court erred in concluding that the test was admissible even if Officer Snyder did not comply with the fifteen-minute observation standard. According to Charan, even if the test was otherwise shown to be reliable, it was rendered inadmissible *per se* by Officer

2. Officer Bones testified that he was a breath testing specialist and taught that class for the Boise City Police Department. He was called as a witness by Charan to testify at the hearing on Charan's motion in limine, and his qualifications as an expert are not questioned on this appeal.

3. I.C. § 18-8004(4), provides, in pertinent part: Analysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a laboratory operated by the Idaho department of law enforcement or by a laboratory approved by the Idaho department of law enforcement under the provisions

of approval and certification standards to be set by that department, *or by any other method approved by the Idaho department of law enforcement....* Notwithstanding any other provisions of law or rule of court, the results of any test for alcohol concentration ... by any ... method approved by the Idaho department of law enforcement *shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination.* (Emphasis added.)

Snyder's noncompliance with the DLE instructions. He reasons that by terms of Idaho Code § 18–8004(4), BAC tests are admissible only if administered in strict compliance with the method approved by the DLE.

This Court has previously rejected the argument, now advanced by Charan, that stringent adherence to the administrative agency's directions for test procedures is the *sine qua non* for admission of tests governed by I.C. § 18–8004(4). In *State v. Bell*, 115 Idaho 36, 38, 764 P.2d 113, 115 (Ct.App.1988), we observed that § 18–8004(4) does not expressly condition the validity or admissibility of test results on compliance with the test regulations adopted by the administrative agency.[4] In the absence of an express exclusionary provision in the statute, we declined to hold that the statute requires exclusion of a test result whenever compliance with the agency's testing requirements is not shown. Rather, we held that "to admit the test result the state must provide adequate foundation evidence consisting *either* of expert testimony *or* a showing that the test was administered in conformity with the applicable test procedure." *Id.* at 39–40, 764 P.2d at 116–117 (emphasis added).

Subsequently in *State v. Phillips*, 117 Idaho 609, 790 P.2d 390 (Ct.App.1990), we were asked to resolve whether a blood alcohol analysis was properly admitted even though the technician who drew the blood used an isopropyl alcohol swab to cleanse the defendant's skin prior to injecting the extraction needle, a procedure contrary to an administrative regulation disallowing use of alcohol solutions as a skin antiseptic in drawing blood samples for alcohol content analysis. In that case, several experts testified that use of the alcohol swab would not have contaminated the blood sample. We held that, because the reliability and accuracy of the blood test results were established through expert testimony at trial, the test results were admissible notwithstanding the technician's violation of the procedure specified in the regulation.

In the present case, Officer Bones testified that the fifteen-minute observation period for administering breath tests was originally required because the Intoxilyzer 3000, a predecessor to the Intoxilyzer 5000, could not detect the presence of mouth alcohol such as that which might be introduced by ingesting something or by burping. Since mouth alcohol could produce an invalid sample, but dissipates within fifteen minutes, the fifteen-minute observation period was mandated to prevent inaccurate test results. According to Officer Bones, although this observation period is required in the Operator's Training Manual as an additional safeguard, it is not really necessary to ensure accurate tests from the Intoxilyzer 5000 because that instrument has a "negative slope indicator" that detects when mouth alcohol is present and indicates that the breath sample is invalid. It was his opinion that, because the negative slope indicator did not detect mouth alcohol in Charan's breath samples, the test was accurate.

We agree with the district court that this expert testimony regarding the reliability of the test presented an adequate foundation for its admission into evidence. Accordingly, it is unnecessary for us to examine the magistrate's finding of substantial compliance with the fifteen-minute observation requirement.

We caution, however, that our disposition of this case is not a holding that, as a matter of law, Intoxilyzer 5000 tests are admissible without the fifteen-minute observation mandated by compliance with the Operator's Training Manual. We hold only that the *uncontroverted* testimony of Officer Bones in this case provided sufficient foundation for admission of the evidence. Where compliance with approved procedures for test administration is not shown, it will be necessary for trial courts to determine whether foundational standards have been met by alterna-

---

4. At the time of the prosecution in the *Bell* case, the Idaho Department of Health and Welfare was the agency charged with authority under I.C. § 18–8004(4) to approve evidentiary test methods for alcohol concentration. The statute was amended in 1988 to substitute the Idaho Department of Law Enforcement for the Idaho Department of Health and Welfare. 1988 Idaho Sess. Laws, ch. 47.

tive means based on the evidence presented in each case.

### CONCLUSION

Although we base our decision on a ground different than that relied upon by the magistrate, we conclude that the magistrate correctly denied Charan's motion to exclude the BAC test results. Therefore, Charan's judgment of conviction is affirmed.

Judge PERRY and Judge SCHWARTZMAN, concur.