**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37509**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2011 Opinion No. 56 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 12, 2011 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| BYRON HEALY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Ron Schilling, District Judge; Hon. Debra A. Orr, Magistrate.

District court's intermediate appellate decision affirming judgment of conviction for driving under the influence, <u>affirmed</u>.

Mark J. Mimura, Canyon County Public Defender; Casey H. Swensen, Deputy County Public Defender, Caldwell, for appellant. Casey H. Swensen argued.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent. Lori A. Fleming argued.

_____

GUTIERREZ, Judge

Byron Healy appeals from the district court's intermediate appellate decision affirming his judgment of conviction for driving under the influence. Specifically, Healy challenges the admission of his breath test results at trial. For the reasons set forth below, we affirm.

**I.**

**BACKGROUND**

On November 3, 2007, a police officer stopped Healy for speeding and failing to maintain in his lane of travel. The officer noticed Healy's speech was slow and slurred, his eyes were bloodshot and glossy, and the smell of alcohol was coming from his vehicle. Healy admitted to the officer that he had consumed seven or eight drinks that evening. The officer performed standard field sobriety tests on Healy, which he failed, and the officer placed Healy under arrest. After Healy was transported to the jail, the arresting officer administered a breath

1

test using the Intoxilyzer 5000EN. The test results showed an alcohol concentration of .16, .18, and .15.

The State charged Healy with driving under the influence, Idaho Code § 18-8004. At trial, Healy objected to the admission of his breath test results, asserting the State failed to lay adequate foundation to establish their reliability. After an offer of proof through the testimony of a breath testing specialist, the magistrate overruled Healy's objection and admitted the breath test results into evidence. The jury found Healy guilty of driving under the influence. Healy appealed and the district court affirmed his conviction. Healy appeals the district court's intermediate appellate decision.

## II.

## STANDARD OF REVIEW

On review of a decision of the district court, rendered in its appellate capacity, we review the decision of the district court directly. *Losser v. Bradstreet*, 145 Idaho 670, 672, 183 P.3d 758, 760 (2008); *State v. DeWitt*, 145 Idaho 709, 711, 184 P.3d 215, 217 (Ct. App. 2008). We examine the magistrate record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. *Id.* If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure. *Id.*

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992).

## III.

## DISCUSSION

Healy asserts the district court erred in holding the magistrate was within its discretion when the magistrate held that the proper foundation had been laid to admit the Intoxilyzer 5000EN results. In order to have the results of a breath test admitted as evidence at trial, the State must proceed in one of two ways. First, it may establish that the administrative procedures,

which ensure the reliability of that test, have been met. *State v. Mazzuca*, 132 Idaho 868, 869, 979 P.2d 1226, 1227 (Ct. App. 1999); *State v. Utz*, 125 Idaho 127, 129, 867 P.2d 1001, 1003 (Ct. App. 1993). Under I.C. § 18-8004(4)[1], the State can meet this foundational requirement by showing a state agency approved the equipment and an officer operated the equipment and administered the test in conformity with applicable standards. *State v. Nickerson*, 132 Idaho 406, 411, 973 P.2d 758, 763 (Ct. App. 1999).

If the State cannot show conformity with the applicable test procedures, it does not automatically require the exclusion of the test results governed by I.C. § 18-8004(4). *State v. Charan*, 132 Idaho 341, 343, 971 P.2d 1165, 1167 (Ct. App. 1998). Rather, the State, as a second option, may call an expert witness to establish the reliability of the test, thereby making test results admissible. *Id.* To illustrate, in *Charan*, the defendant showed that the procedures for administering a breath test with the Intoxilyzer 5000 had not been met because the officer did not observe the defendant for the required fifteen minutes prior to giving the test. The defendant moved to exclude the test results on that basis. However, the district court admitted the results by relying on the testimony of an officer who qualified as an expert based on his experience with both giving breath tests and training other officers on the breath test equipment. The expert testified that even though the procedures for using the machine may not have been followed exactly, the test result for the Intoxilyzer 5000 was reliable for two reasons. First, the fifteen-minute waiting period was a procedure implemented for an older model of breathalyzer to ensure that nothing entered the subject's mouth prior to the test. Because the older model could not detect the presence of recently introduced mouth alcohol, the waiting period was necessary to

---

[1]     Idaho Code § 18-8004(4) states in relevant part:

Analysis of blood, urine or breath for the purpose of determining the alcohol concentration shall be performed by a laboratory operated by the Idaho state police or by a laboratory approved by the Idaho state police under the provisions of approval and certification standards to be set by that department, or by any other method approved by the Idaho state police. Notwithstanding any other provision of law or rule of court, the results of any test for alcohol concentration and records relating to calibration, approval, certification or quality control performed by a laboratory operated or approved by the Idaho state police or by any other method approved by the Idaho state police shall be admissible in any proceeding in this state without the necessity of producing a witness to establish the reliability of the testing procedure for examination.

receive test results that were neither skewed nor invalid. Second, the Intoxilyzer 5000 had a "negative slope indicator" that would detect any mouth alcohol in the subject and would reject the breath samples as invalid if that were the case. Because the equipment did not reject the breath sample, the expert was of the opinion that the result was reliable. Based on this testimony, the district court admitted the test results into evidence at trial because an adequate foundation was laid showing the test's reliability even if the officer did not comply with the observation procedures as directed in the manual. Charan appealed and this Court also concluded that reliance on the uncontroverted testimony of the expert provided a sufficient foundation for admission of the evidence. *Id.* at 341-43, 971 P.2d at 1165-67.

Healy argues that the breath test results should not have been admitted at trial because the State failed to lay a foundation for reliability either by showing compliance with administrative procedures or through the testimony of the breath testing specialist. The State argues, among other things, that the breath testing specialist laid the foundation for the test results' reliability, pointing out that his testimony established the machine was working properly "based on the fact Healy was able to complete his breath test." The State relies on *Charan* as authority for this argument.

We begin by addressing the State's argument and clarifying the authority in *Charan*. *Charan* does not stand for the proposition that an expert can merely testify that, because a breathalyzer did not reject test results, or rather allowed the test to continue, it worked properly and the test results are reliable. Testimony that "the test results were reliable because the machine worked" is not, by itself, enough to lay an adequate foundation for the admissibility of the evidence. Instead, the *Charan* court was able to rely on testimony regarding why the unfollowed procedures were in place, why the unfollowed procedures did not affect the test results of the Intoxilyzer 5000 because of the additional safeguard of the negative slope indicator, and the lack of any other procedural defects in the use of the Intoxilyzer 5000 or the test administration. Thus, in order to meet the standard in *Charan* and allow breath test results into evidence when there is not strict compliance with the administrative procedures, the State needs to not only present an expert to testify, but that expert must also testify as to why procedural defects did not affect the reliability of test results in the particular case at issue.

Here, it is uncontroverted that there were procedural defects. At the time Healy was arrested, the standard operating procedures for the Intoxilyzer 5000 calibration checks provided:

4

"The 0.08 solution should be changed approximately every 100 calibration checks or every month whichever comes first." It also stated: "Whenever the 0.08 solution is changed, a four-sample calibration check using the 0.20 solution must be run. A total of four 0.20 calibration check results are required, whether via the breath hose, simulator port, or a combination of the two." At trial, the State's breath testing specialist testified that the above procedures were not followed with regard to the Intoxilyzer 5000EN[2] that was used on Healy. He testified that Healy's breath test was the 105th test that was run since the last time the 0.08 solution had been changed, and that when he ran the solution, he ran only a two-sample calibration check using the 0.20 solution rather than a four-sample check as was required. The specialist emphasized that these procedures are not mandatory, in the sense that the failure to follow them exactly does not affect the validity of the test. We agree that the directive to change the 0.08 solution every 100 calibration checks or every month was a procedure that provided some latitude and that Healy's test, as the 105th since the previous change, fell reasonably within that allowance. Nevertheless, the requirement to do the four-sample calibration checks of the 0.20 solution does not provide the same leeway and the failure to follow that requirement necessitated the testimony of an expert that other safeguards in the Intoxilyzer 5000EN were still able to ensure the reliability of its results.

In this regard, the specialist testified that there were other safeguards to ensure the Intoxilyzer 5000EN was providing reliable results. First, he testified that although the 0.08 solution had not yet been changed, the procedures also required the solution be used within its expiration date and the solution in use in the equipment when Healy took the breath test did not expire for another nine months. Second, the specialist testified the procedures require that the 0.08 solution fall within an acceptable concentration range somewhere between 0.07 and 0.09. The solution used in Healy's breath test showed a concentration value of 0.78, well within the acceptable range. Finally, the specialist testified that based on his experience with the breath test equipment, the failure to run the four calibration checks on the .0.20 solution would not affect

---

[2]     Although the Idaho State Police has not issued standard operating procedures for the Intoxilyzer 5000EN, specific training for operation of the 5000EN model is not necessary because it is merely an upgraded version of the Intoxilyzer 5000, rather than a new model. *See Masterson v. Idaho Dept. of Transportation*, 150 Idaho 126, 129, 244 P.3d 625, 628 (Ct. App. 2010).

the test results in this case. Considering the additional safeguards ensuring that the 0.08 solution was valid and the specialist's relevant experience, we conclude the proper foundation was laid for admitting the test results at trial, even though the calibration procedures for the Intoxilyzer were not precisely followed.

To the extent Healy argues the specialist's testimony could not form the basis for the State's foundation because he was "never certified as an expert" at trial, this argument is without merit. Although the specialist who testified was never officially labeled as an "expert," he had experience as a breath testing specialist and was "certified and re-certified by the POST Academy to do maintenance, calibration and also training on the Intoxilyzer." He was also familiar with the mechanics and administrative procedures regarding the calibration of the Intoxilyzer 5000EN. Given his training, experience, and knowledge, the specialist was an expert who provided an adequate foundation for the admission of Healy's breath test results at trial. *See Charan*, 132 Idaho at 342 & n.2, 971 P.2d at 1166 & n.2 (holding that the qualifications of a breath testing specialist as an expert to testify about the operation of the Intoxilyzer 5000 would not be questioned on appeal).

## IV.

## CONCLUSION

The district court correctly ruled that the testimony of the breath testing specialist provided an adequate foundation for Healy's breath test results to be admitted as evidence at trial. Accordingly, we affirm the district court's intermediate appellate decision affirming Healy's judgment of conviction for driving under the influence.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**