**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44041**

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | **2017 Opinion No. 36** |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Filed: June 29, 2017** |
| | ) | |
| v. | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **WILBERT LONGHOFER,** | ) | |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Juneal C. Kerrick, District Judge.

Order denying motion in limine and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Ben P. McGreevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

HUSKEY, Judge

Wilbert Longhofer appeals from the judgment of conviction entered upon his conditional guilty plea to operating a motor vehicle while under the influence of alcohol. Longhofer argues the district court abused its discretion when it denied Longhofer's motion in limine to exclude the alcohol breathalyzer test results. Because the State's expert laid the necessary foundation to show the reliability of the breath-test results, we affirm the district court's denial of the motion in limine and judgment of conviction.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Longhofer was stopped by a police officer for speeding. The officer conducted field sobriety tests and used a LifeLoc FC20 breathalyzer to conduct three breath tests. The breath tests yielded results of .114, INF (Insufficient), and .116. The officer arrested Longhofer.

1

The State charged Longhofer with felony operating a motor vehicle while under the influence of alcohol, Idaho Code §§ 18-8004, 18-8005.[1] Longhofer pleaded not guilty. Longhofer filed a motion in limine to exclude the blood alcohol concentration (BAC) results, memorandum in support, and request for hearing, as well as two amended motions. The motion (and the two subsequent motions) requested an order excluding the results of the BAC tests, since the performance check on the breathalyzer did not meet the standards required by the Idaho Breath Alcohol Standard Operation Procedure manual (SOP).

The SOP requires breathalyzers to undergo a performance verification within twenty-four hours before or after the breathalyzers are used for a breath test. The performance verification requires an operator to take two samples which cannot deviate more than 10% from the target value. In this case, the target value was .08, while the samples measured .073 and .070. A 10% deviation from .08 meant the sample must fall between .072 and .088. The .070 sample, therefore, fell outside the acceptable range and did not conform to the SOP. Longhofer argued that because the SOP was not properly followed, the breath-test results should be excluded from evidence.

In response, the State argued that Longhofer's motion in limine should be denied because the State intended to call an expert witness at the hearing. The State explained its expert witness would testify that the breathalyzer had been trending low and the results would have been to the benefit of Longhofer. Longhofer replied that the State cannot prove the process produced an accurate result.

At the hearing, counsel stipulated: (1) the "blows" in the field were conducted properly; and (2) the twenty-four-hour performance verification on the breathalyzer was not done pursuant to the SOP. The State's expert was an employee of the Idaho State Police and helped to calibrate and certify all of Idaho's new LifeLoc FC20 breath-testing instruments. The expert created the SOP for breath-testing. The expert explained the performance verification procedure, which is required twenty-four hours before or after a breath test and is meant to show that the calibration is still valid and the instrument is providing reliable results. This calibration is required for the LifeLoc FC20 breathalyzer because the breathalyzer uses fuel cell technology, which dries out over time. The expert explained that the fuel cell becomes less responsive to alcohol as it dries

---

[1]    The State charged Longhofer with a felony DUI because Longhofer had a prior felony DUI conviction in 2007.

2

out, which produces results that are steadily lower than the actual BAC, but are internally consistent with each other. When the fuel cell begins to trend low in this way, the software on the device requires recalibration in order to accurately report the blood alcohol level. After reviewing the performance verification log, the State's expert concluded the breath-test readings had been trending low in this case. The expert also concluded there was no evidence to lead him to believe the breath-test results were elevated. As a result, the State's expert concluded he was confident to a reasonable degree of scientific certainty that Longhofer's breath test measured an alcohol content above .08.

After the hearing, the district court issued a written order denying Longhofer's motion in limine. The court found the State's expert persuasive because "any issue with the device would cause it to produce lower, not higher readings, and would thus not prejudice Defendant." As a result, the court determined the expert testimony provided a sufficient basis to allow the evidence of the breath tests to be admitted at trial.

The State filed an amended information that alleged Longhofer was a persistent violator, I.C. § 19-2514. Pursuant to a conditional plea agreement, Longhofer pleaded guilty to felony operating a motor vehicle while under the influence of alcohol, and the State dismissed the persistent violator charge. Longhofer reserved his right to appeal the district court's denial of his motion in limine. The district court sentenced Longhofer to a unified sentence of ten years, with three and one-half years determinate. Longhofer timely appeals.

## II.

## STANDARD OF REVIEW

The decision whether to admit evidence at trial is generally within the province of the trial court. A trial court's determination that evidence is supported by a proper foundation is reviewed for an abuse of discretion. *State v. Gilpin*, 132 Idaho 643, 646, 977 P.2d 905, 908 (Ct. App. 1999). Therefore, a trial court's determination as to the admission of evidence at trial will only be reversed where there has been an abuse of that discretion. *State v. Zimmerman*, 121 Idaho 971, 973-74, 829 P.2d 861, 863-64 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it,

3

and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

## III.

## ANALYSIS

Longhofer argues the district court abused its discretion when it denied his motion in limine that sought to exclude the breathalyzer test results. Longhofer asserts the State did not lay the necessary foundation to show how the breath-test results were reliable. We disagree.

In order to admit the results of a breath test into evidence, the State must proceed in one of two ways. *See State v. Healy*, 151 Idaho 734, 736-37, 264 P.3d 75, 77-78 (Ct. App. 2011). First, the State may establish that the administrative procedures, which ensure the reliability of that test, have been met. *State v. Mazzuca*, 132 Idaho 868, 869, 979 P.2d 1226, 1227 (Ct. App. 1999); *State v. Utz*, 125 Idaho 127, 129, 867 P.2d 1001, 1003 (Ct. App. 1993). As part of this first option, the State can show that a state agency approved the equipment and an officer operated the equipment and administered the test in conformity with applicable standards. Idaho Code § 18-8004(4); *State v. Nickerson*, 132 Idaho 406, 411, 973 P.2d 758, 763 (Ct. App. 1999). Second, even without fulfilling the administrative procedures, the State may still make the test results admissible if it calls an expert witness to establish the reliability of the test. *State v. Charan*, 132 Idaho 341, 343, 971 P.2d 1165, 1167 (Ct. App. 1998).

Here, both parties agree the State did not comply with the administrative procedures when it executed the breath test. Because it is uncontroverted that the State did not comply with the administrative procedures, the admissibility of evidence in this case depends upon whether the State's expert witness properly established the reliability of the breath test. Longhofer argues the State did not lay the necessary foundation to show how the breath-test results were accurate, and thus failed to meet the requisite standard for admissibility. We disagree.

In accordance with several legislative developments, the Idaho Supreme Court has established that, when analyzing an alcohol test, we focus on whether a defendant is above the legal limit of .08, rather than the exact alcohol concentration within the blood. *See Elias-Cruz v. Idaho Dep't of Transp.*, 153 Idaho 200, 203, 280 P.3d 703, 706 (2012). In 1970, the Idaho Code created a presumption of intoxication if a driver's BAC exceeded the legal limit. *See* I.C. § 49-1102 (1970). In 1984, the statute was repealed and codified as I.C. § 18-8004, so that test results no longer created a presumption of intoxication, but could be used to establish a per se violation.

4

*Elias-Cruz*, 153 Idaho at 203, 280 P.3d at 706. A 1987 amendment removed the requirement of showing the amount, by weight, of alcohol in the blood. *See* 1987 Idaho Sess. Laws, ch. 122, § 2, pp.247-50. A violation can instead be established through the results from an approved blood, breath, or urine test. *Id.* The Supreme Court provided the following explanation to summarize the recent legislative history:

> After the 1987 amendment, a violation can be shown simply by the results of a test for alcohol concentration that complies with the statutory requirements. With that change, the margin of error in the testing equipment is irrelevant. The equipment need not precisely measure the alcohol concentration in the person's blood. The test need only be based upon the correct formula, and the equipment must be properly approved and certified.

*Elias-Cruz*, 153 Idaho at 204, 280 P.3d at 707. The Court acknowledged it does not require the State to establish the precise amount of alcohol in the driver's blood at the time of driving, even if the alcohol concentration at the time of driving could be lower than at the time of testing. *Id.* at 205, 280 P.3d at 708. The Court in *Elias-Cruz* further explained the current standard as follows:

> The issue is not the alcohol concentration in the blood. It is the alcohol concentration as shown by the test results. There is nothing to which to compare the test results. All that is required is that the test results show that the alcohol concentration was above the legal limit.

*Id.* at 206, 280 P.3d at 709.

More recently, the Supreme Court affirmed the holding in *Elias-Cruz* that the proper standard is no longer the concentration of alcohol in the driver's blood. *State v. Jones*, 160 Idaho 449, 451, 375 P.3d 279, 281 (2016). This Court also recognized *Elias-Cruz* as controlling precedent. *State v. Tomlinson*, 159 Idaho 112, 121, 357 P.3d 238, 247 (Ct. App. 2015). However, in *Tomlinson* we issued an additional explanation that the *Elias-Cruz* holding does not prevent a defendant from challenging the accuracy or reliability of the specific machine or test results. *Id.* As such, Longhofer properly challenges the reliability of the breathalyzer in this case, but the State is not required to show exactly the alcohol concentration in Longhofer's blood in order to admit the evidence of the test results. Instead, the State must show that the test results reliably demonstrate that Longhofer's BAC was .08 or more.

We find the Supreme Court's analysis in *Elias-Cruz* is controlling in this case. However, we acknowledge the issue in *Elias-Cruz* was distinct from the issue here. The question in *Elias-Cruz* was whether a testing machine's margin of error was relevant to determine if the

5

defendant's BAC exceeded the legal limit. *Elias-Cruz*, 153 Idaho at 206-07, 280 P.3d at 709-10. In contrast, Longhofer does not challenge the breathalyzer's margin of error. Nonetheless, the Court in *Elias-Cruz* does not specify that its holding should be limited to the question of margin of error. The holding instead described the legislative history and judicial trends in analyzing alcohol concentration testing, after which the Court decided breath-test results are analyzed according to the legal limit rather than the actual BAC of the driver. We therefore find the holding in *Elias-Cruz* is controlling in this case.

On appeal, Longhofer argues the breathalyzer was underreporting, and thus the breath test was inaccurate. Furthermore, Longhofer argues the State's expert failed to testify why the procedural defects did not affect the reliability of the test results. Using *Jones* and *Elias-Cruz*, Longhofer contends the actual alcohol concentration is irrelevant. Longhofer concluded: "[The State's expert]'s testimony on Mr. Longhofer's actual alcohol concentration was not relevant to why the procedural defects did not affect the reliability of the test results."

We disagree with Longhofer's argument. Longhofer correctly cites *Elias-Cruz* for the rule that the actual alcohol concentration within the driver's blood is irrelevant. However, missing from Longhofer's analysis is how the State's expert must still testify that the breath-test results can be relied upon to show that Longhofer's BAC was above the legal limit.

Here, it is first helpful to define and apply the following terms: consistent, reliable, and accurate. "Consistent" is defined as "marked by harmony, regularity, or steady continuity throughout: showing no significant change, unevenness, or contradiction." WEBSTER'S THIRD NEW INT'L DICT. 484 (3d ed. 1993). "Reliable" is defined as "giving the same result on successive trials." WEBSTER'S THIRD NEW INT'L DICT. 1917 (3d ed. 1993). Finally, "accurate" is defined as "in exact conformity to truth or to some standard." WEBSTER'S THIRD NEW INT'L DICT. 14 (3d ed. 1993). Although similar in meaning and usage, the three terms are not synonyms. A perfect breathalyzer test would give results that are consistent, reliable, and accurate, so as to indicate the instrument provides regular and predictable results that would be the same on multiple tests, and precisely reflect the exact amount of alcohol within a driver's blood. However, Idaho courts have historically recognized that, at trial, parties have difficulty proving the extent to which a driver's "actual" BAC while driving was above or below the reading on a breathalyzer. *See Jones*, 160 Idaho at 451, 375 P.3d at 281; *Tomlinson*, 159 Idaho at 121-22, 357 P.3d at 247-48; *State v. Roach*, 157 Idaho 551, 555-56, 337 P.3d 1280, 1284-85

6

(Ct. App. 2014). As a result, Idaho does not require the State to prove the exact amount of alcohol within a driver's blood or that test results reflect the precise concentration of alcohol in the blood. *See Elias-Cruz*, 153 Idaho at 205, 280 P.3d at 708. *Elias-Cruz* made clear that the actual concentration in the blood is not the issue when analyzing breath-test results. *Elias-Cruz*, 153 Idaho at 206, 280 P.3d at 709. Similarly, *Healy* analyzed the expert testimony only as to the reliability of the breath test, and not the accuracy. *Healy*, 151 Idaho at 736, 264 P.3d at 77.

Here, the State's expert established that the breath-test results were consistent. The State's expert explained that as the fuel cell ages, it underreports the BAC. However, the expert explained that the underreporting is consistent, so that the aging fuel cell still shows consistent results. The instrument, therefore, provided results that were internally consistent. Upon review of the logs, the State's expert concluded the breath-test instrument in this case was underreporting as expected from an aging fuel cell, but that this reporting was consistent.

Additionally, the State's expert established the reliability of the breath test administered to Longhofer. The question of reliability does not focus on whether the test measures the exact concentration of alcohol in the driver's blood. Instead, based on the reliability standard articulated in *Elias-Cruz*, the test results only need to show the test results accurately measured Longhofer's BAC as above the legal limit. *Elias-Cruz*, 153 Idaho at 206, 280 P.3d at 709. In this case, the expert testified to a reasonable degree of scientific certainty that Longhofer's BAC was above .08; as such, the State established the admissibility of the test results.

In sum, the State's expert in this case explained the test results in Longhofer's case were internally consistent and reliably measured Longhofer's BAC as greater than .08. The expert did not opine about the precise concentration level of alcohol in Longhofer's blood besides that the level was greater than .08. The expert also did not testify the degree to which the breathalyzer was underreporting or calculate the precise amount of alcohol in Longhofer's blood when he was driving. Instead, the State's expert issued the following conclusion: "All of the evidence shows that the instrument appears to be underreporting and definitely not overreporting. So those results given in the field, that they're definitely not overreported." The expert agreed that, in his expert opinion, he was confident to a reasonable degree of scientific certainty that the breath measured was above the legal limit of .08. Because the State's expert explained how the test reliably measured Longhofer's BAC as above the legal limit, the State provided sufficient foundation to admit the evidence of the breath-test results. Furthermore, because the State's

7

expert issued his conclusions relative to the legal limit and not an actual concentration of alcohol, we determine the testimony satisfied *Elias-Cruz* and sufficiently accounted for the procedural defects.

## IV.
## CONCLUSION

Because the State's expert demonstrated the breath-test results were reliable, we affirm the district court's denial of the motion in limine and judgment of conviction.

Judge GUTIERREZ and Judge MELANSON **CONCUR**.