# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 48357

STATE OF IDAHO,                                   )
                                                  )
   Plaintiff-Respondent,                          )
                                                  )   **Boise, January 2022 Term**
                                                  )
v.                                                )   **Opinion Filed: August 11, 2022**
                                                  )
JESUS JUAN CARLOS BLANCAS,                         )   **Melanie Gagnepain, Clerk**
                                                  )
   Defendant-Appellant.                           )
                                                  )

Appeal from the District Court of the Seventh Judicial District of the State of Idaho, Bonneville County. Dane H. Watkins, Jr., District Judge.

The district court's order denying Blancas' motion to suppress is <u>reversed</u> and the case is <u>remanded.</u>

Eric D. Fredericksen, State Appellant Public Defender, Boise, for Appellant. Jenny Swinford argued.

Lawrence G. Wasden, Idaho Attorney General, Boise, for Respondent. Kale Gans argued.

_____

BRODY, Justice.

This is a case about the exigent circumstances exception to the Fourth Amendment's warrant requirement in an investigation for suspected driving under the influence of alcohol (DUI). Jesus Juan Carlos Blancas was stopped by Idaho State Police Sergeant Chris Elverud. Elverud suspected Blancas of driving under the influence and administered four breath tests, but only one produced a valid result. That test indicated that Blancas' blood alcohol content (BAC) was nearly three times the legal limit. Elverud then took Blancas to a hospital to collect a blood sample for testing. Blancas refused to consent to the blood draw, and Elverud attempted to reach an on-call magistrate judge to obtain a warrant. After failing to reach the on-call magistrate judge, Elverud instructed hospital staff to draw Blancas' blood under the exigent circumstances

1

exception to the warrant requirement. We hold that the warrantless blood draw violated Blancas' Fourth Amendment rights because the State failed to prove there was insufficient time to obtain a warrant and, therefore, failed to prove exigent circumstances justified the warrantless draw.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

At 1:20 AM on the morning of April 14, 2019, Elverud stopped Blancas' car in Bonneville County after observing Blancas change lanes without signaling, cross the center line, and fail to maintain a consistent speed. After approaching the car and talking with Blancas, Elverud smelled an odor of alcohol emanating from the car. Blancas' speech was slurred, his eyes were glassy and bloodshot, and he struggled to remove his wallet from his pants pocket to produce his driver's license. Elverud administered the horizontal gaze nystagmus, one-leg stand, and walk-and-turn field sobriety tests. Blancas failed each test and Elverud placed him under arrest for suspected DUI at 1:33 AM.

Elverud asked Blancas if he would consent to a breath test to measure his BAC, and he played the administrative license suspension (ALS) advisory recording to inform Blancas of the consequences of refusing consent. Blancas initially refused, but eventually provided four breath samples, though only one produced a valid result. It showed a BAC of .234. The district court found that Blancas had intentionally delayed the investigation by "playing games," including by failing to comply with instructions for some of the breath tests.

Because Blancas did not provide two valid breath tests, Elverud told Blancas he was going to take him to a hospital to collect a blood sample. Blancas refused to consent to a blood draw. Before arriving at the hospital, Elverud learned that Blancas had been convicted of a prior felony DUI in 2012. Elverud parked his patrol car at the emergency room entrance and called the on-call prosecutor about obtaining a warrant to collect the blood sample at 2:53 AM.

The prosecutor told Elverud to contact the on-call magistrate, but indicated she was out of town at a judicial conference. The prosecutor then advised, "if you're not able to get ahold of her, just draw the blood and do it . . . on exigency grounds." After talking to the prosecutor, Elverud called dispatch with the name of the on-call magistrate, and dispatch provided Elverud with her contact information. Elverud tried and failed to reach the magistrate judge by cell phone, making three calls between 3:03 AM and 3:06 AM. He then took Blancas into the hospital and requested a blood draw from hospital staff at 3:08 AM. The blood draw showed Blancas had a BAC of .249.

The State charged Blancas with felony DUI under Idaho Code section 18-8005(9), alleging that he had previously been convicted of a felony DUI within the last 15 years. Blancas moved to suppress the results of the blood draw, alleging the exigency exception to the warrant requirement was not satisfied. The district court held a hearing on Blancas' motion to suppress. Elverud testified at the hearing and the dash-cam video of Blancas' arrest and the following events were admitted as evidence.

The district court denied Blancas' motion to suppress. It found that Blancas had attempted to delay the investigation by "playing games," and lengthened the investigation "beyond [the delay] allowed under an exercise of his Constitutional rights." Then, noting Elverud's unsuccessful attempt to reach the on-call magistrate and the natural metabolization of alcohol in Blancas' bloodstream, the district court concluded, under the totality of circumstances, that "the exigencies of the situation made the need of obtaining a valid BAC prior to destruction of the evidence so compelling that [a] warrantless search was objectively reasonable."

Blancas entered a conditional plea of guilty to felony DUI, reserving his right to appeal the denial of his motion to suppress. The district court sentenced Blancas to 10 years, with four years fixed, suspended execution of the sentence, and placed Blancas on probation for six years. Blancas timely appealed.

## II. STANDARD OF REVIEW

The Court reviews the denial of a motion to suppress using a bifurcated standard. *State v. Danney*, 153 Idaho 405, 408, 283 P.3d 722, 725 (2012). The Court will "accept the trial court's findings of fact unless they are clearly erroneous but will freely review the trial court's application of constitutional principles to the facts found." *Id.*

## III. ANALYSIS

Blancas' primary argument relies on a statement in *State v. Chernobieff*, 161 Idaho 537, 387 P.3d 790 (2016) ("*Chernobieff I*"), that "when an on-call magistrate is unable to be reached by law enforcement, the State has the burden of showing why that is the case and that good cause exists for the unavailability." *Id.* at 541, 387 P.3d at 794. Blancas asserts that, consistent with *Chernobieff I*, the preeminent factor in determining whether exigent circumstances existed in this case is the reason for the magistrate's unavailability. Because he maintains that attendance at an out-of-town judicial conference was not good cause, he argues that the district court erred in denying his motion to suppress. Blancas also argues that even if additional factors are

3

considered, they "do not tip the scale in favor of an exigency."

The State argues that Blancas' argument under *Chernobieff I* is without merit because the statement he cites was held to be dicta in *Chernobieff v. State*, 168 Idaho 98, 480 P.3d 136 (2021) ("*Chernobieff II*"). Further, the State maintains that the district court correctly found Blancas' conduct created an exigency considering all the relevant factors.

The State is correct that Blancas' reliance on the statement in *Chernobieff I* is misplaced because it is dicta. However, we agree with Blancas that the district court erred in denying his motion to suppress because, regardless of the reason for the magistrate judge's unavailability, exigent circumstances did not exist.

## A. The warrantless blood draw was not justified by exigent circumstances.

"Requiring that a person submit to a blood alcohol test is a search and seizure under the Fourth Amendment to the United States Constitution . . . ." *State v. Wulff*, 157 Idaho 416, 418, 337 P.3d 575, 577 (2014). "Warrantless searches and seizures are presumptively unreasonable under the Fourth Amendment." *Id.* at 419, 337 P.3d at 578 (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)). "However, because the ultimate touchstone of the Fourth Amendment is 'reasonableness,' the warrant requirement is subject to certain exceptions." *State v. Smith*, 168 Idaho 463, 471–72, 483 P.3d 1006, 1014–15 (2021) (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)). "One well-recognized exception applies when ' "the exigencies of the situation" make the needs of law enforcement so compelling that [a] warrantless search is objectively reasonable under the Fourth Amendment.' " *Kentucky v. King*, 563 U.S. 452, 460 (2011) (quoting *Mincey v. Arizona*, 437 U.S. 385, 394 (1978)).

"Exceptions to the warrant requirement are 'few in number and carefully delineated,' and . . . police bear a heavy burden when attempting to demonstrate [that] an urgent need . . . justif[ies] warrantless searches or arrests. Indeed, the [United States Supreme] Court has recognized only a few such emergency conditions." *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984) (citation omitted). The risk of imminent destruction of evidence can be such an emergency. *State v. Smith*, 168 Idaho 463, 472, 483 P.3d 1006, 1015 (2021). Thus, if "the facts, as they appeared at the precise moment in question, would lead a reasonable, experienced officer to believe that evidence might be destroyed before a warrant could be secured[,]" officers may act to secure such evidence without a warrant. *Id.* (quoting *State v. Holton*, 132 Idaho 501, 504, 975 P.2d 789, 792 (1999)).

4

The natural metabolization of alcohol in the bloodstream of a drunk-driving suspect presents a circumstance distinct from many other situations in which evidence is at risk of destruction. On one hand, it is indisputable that some evidence of intoxication will dissipate with each minute that passes. On the other hand, the evidence does not disappear all at once:

> The context of blood testing is different in critical respects from other destruction-of-evidence cases in which the police are truly confronted with a "now or never" situation. In contrast to, for example, circumstances in which the suspect has control over easily disposable evidence, BAC evidence from a drunk-driving suspect naturally dissipates over time in a gradual and relatively predictable manner.

*Missouri v. McNeely*, 569 U.S. 141, 153 (2013). Thus, in *McNeely*, the United States Supreme Court rejected an argument that the metabolization of alcohol creates a *per se* exigency. *Id.* at 156. Instead, the totality of circumstances surrounding a warrantless blood draw must be evaluated on a case-by-case basis to assure the two essential requirements of the exigent circumstances exception are met: "there is [1] a compelling need for official action and [2] no time to secure a warrant." *See id.* at 149 (quoting *Michigan v. Tyler*, 436 U.S. 499, 509–510 (1978)).

As to the first element of this test, we note that Elverud indicated he was investigating Blancas for felony DUI based on a prior felony DUI conviction. It would have been sufficient to prove that Blancas was guilty of this charge by establishing his BAC was above .08. *See* I.C. §§ 18-8004(1)(a), -8005(9) (providing that driving with a BAC above .08 within 15 years of a prior felony DUI conviction is a felony offense). Given that Blancas registered a BAC of .234 on a valid breath test—nearly three times the legal limit—and he failed all field sobriety tests administered, we are skeptical that the State's need for additional evidence rose to the level of "compelling." However, we need not decide whether the first element of the exigency test was met, because the second element clearly was not.

Blancas contends that the .234 BAC shown by the valid breath test undermines the district court's conclusion that an exigency existed. According to Blancas, "[a]lthough personal characteristics (weight, gender, alcohol tolerance, and the manner of consumption) can affect dissipation, an individual's BAC 'typically decreases by approximately .015 [1.5 percent] to .02 [2 percent] per hour once the alcohol has been fully absorbed.' " Because it would have taken substantial time for Blancas' BAC to reach .08, Blancas asserts there was not an urgent need to draw his blood. Additionally, he argues the district court gave undue weight to the delay from his

5

"playing games" because the time between the end of the ALS recording and his last attempted breath test was a brief portion of the overall time that passed between the traffic stop and Elverud's call to the prosecutor.

The State disputes Blancas' characterization of the intentional delay because his playing games was not limited to the period Blancas contends. Instead, the State argues Blancas played a "far lengthier" game of speeding up and slowing down the investigation from the time he failed the field sobriety tests up to the call to the prosecutor. According to the State, this delay, along with the unavailability of the magistrate and the natural dissipation of alcohol, was sufficient to create an exigency.

We first address the relevance of Blancas' intentional delaying of the investigation. In *Chernobieff I*, like here, the question was whether a warrantless blood draw in a DUI investigation was justified by exigent circumstances. After we noted that the district court in *Chernobieff I* "made reference to the delay resulting from Chernobieff's refusal to perform field sobriety tests[,]" we held that "[a]ny delay caused by Chernobieff's exercise of his Constitutional rights" was not appropriate in the exigency analysis. 161 Idaho at 541, 387 P.3d at 794. Citing this holding, the district court endeavored to distinguish between Blancas' legitimate insistence on his rights and illegitimate intentional delay.

We hold that it was not necessary for the district court to parse out the portion of the delay that was legitimate from that which was not. The holding in *Chernobieff I* suggesting it was necessary to do so does not square with the United States Supreme Court's decision in *McNeely*. In every instance where a drunk-driving suspect refuses to consent to warrantless testing, some delay will necessarily occur if an officer is to obtain a warrant. And contrary to *Chernobieff I*, *McNeely* indicates that delay inherent in the warrant process *is* an appropriate factor to consider in determining whether an exigency exists:

> [F]actors . . . such as the procedures in place for obtaining a warrant or the availability of a magistrate judge, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search. The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.

*McNeely*, 569 U.S. at 164.

At bottom, the exigency exception turns on whether the totality of the circumstances

6

would lead a reasonable officer to believe that immediate action was necessary. *Smith*, 168 Idaho at 472, 483 P.3d at 1015. In a DUI investigation, both the amount of time that has passed since a suspect has been detained and the amount of time that will be required to obtain a warrant are clearly relevant to this question. However, the reason for a delay does not directly bear on whether its length makes immediate action necessary.

To be clear, Elverud was entitled to take into consideration the delay caused by Blancas' playing games. This delay was part of the totality of circumstances and clearly relevant to whether exigent circumstances existed. Our point is that there is no need to distinguish between legitimate and illegitimate delay. The holding in *Chernobieff I* that legitimate delays cannot be considered is at odds with the requirement to consider the totality of circumstances. In short, what matters is *whether* exigent circumstances exist, not *why* they have come about. To the extent that *Chernobieff I* suggests otherwise, it is overruled.

Turning to the dispositive question, we hold that the totality of circumstances known to Elverud at the time Blancas' blood was drawn would not lead a reasonable officer to believe immediate action was necessary. Again, we note that Elverud had obtained one valid breath test result showing that Blancas' BAC was nearly three times the legal limit. We acknowledge that no evidence in the record establishes the rate at which alcohol dissipates from a person's bloodstream. Blancas' claimed range of 1.5 to 2 percent per hour is taken from the Supreme Court's opinion in *McNeely*. However, *McNeely* merely recounted evidence introduced in the trial court; it did not establish the rate of BAC reduction as a matter of law. *See McNeely*, 569 U.S. at 152. Nevertheless, it is indisputable that sobering up is a gradual process and the range in *McNeely* is instructive. Here, Blancas' BAC was measured at .234 at 2:21 AM. Even assuming that Blancas metabolized alcohol at 4 percent per hour—*twice* the maximum rate discussed in *McNeely*—his BAC would not have dropped below .08 for well over three hours after Elverud arrived at the hospital and called the prosecutor at 2:53 AM.

The State notes that Elverud "attempted to reach the on-call magistrate three times[,]" and cites *McNeely* for the proposition that "improvements in communications technology do not guarantee that a magistrate judge will be available when an officer needs a warrant after making a late-night arrest." We are unpersuaded. Between magistrate and district court judges, there were numerous judicial officers serving the Seventh Judicial District when Blancas was arrested. The failure to reach a single magistrate judge—whether in three calls or more—says nothing

7

about the availability of any of the other judicial officers Elverud could have attempted to reach. Indeed, Elverud conceded under cross examination that he would have attempted to reach another judge if he had needed a warrant for the investigation of a more serious crime, such as homicide.

If Elverud had endeavored to do so, the facts suggest he would have been successful. It took little more than a minute for Elverud to obtain from a dispatch operator the personal cell phone and home phone numbers for the magistrate judge he attempted to call. Nothing suggests that dispatch would not have had similar information readily available for other judges. To be sure, we cannot be certain Elverud would have reached another judge to obtain a warrant or know how long it would have taken had he tried. But that is not the question. The question is whether the State met its burden to prove there was no time to do so before reliable evidence was destroyed. Under the facts of this case, the State did not meet this burden.

We do not, as the concurring opinion asserts, impose a requirement for "an investigating officer to call every judge in a given judicial district before determining an exigency exists." We merely uphold the requirement that to invoke the exigent circumstances exception to the Fourth Amendment, the State must prove, under the totality of circumstances, that a reasonable officer would have believed he was presented with a "now or never" situation. The only evidence the State offered to prove that Elverud was confronted with such a situation was that he failed to reach a single magistrate judge after trying to do so for three minutes. Because the facts show that Elverud likely had several hours to obtain a warrant, demonstrating the failure of such minimal efforts is far from proving that a genuine exigency existed.

Nor does it change the analysis that Elverud relied on the advice of the prosecutor that "if you're not able to get ahold of [the on-call magistrate judge], just draw the blood and do it . . . on exigency grounds." Inasmuch as this constituted advice that being unable to reach a single on-call magistrate *ipso facto* creates an exigency, that advice is squarely at odds with the totality of the circumstances analysis required by the Fourth Amendment. As discussed above, the circumstances in this case do not demonstrate there was an immediate need for Blancas' blood to be drawn without a warrant. Therefore, Blancas' Fourth Amendment rights were violated.

**B. The statement in *Chernobieff I* regarding good cause for an on-call magistrate's unavailability remains dicta.**

For the reasons above, the State failed to prove that the warrantless draw of Blancas'

blood was constitutional. However, our decisions in *Chernobieff I* and *Chernobieff II* appear to have created confusion about the significance of good cause for a magistrate's unavailability in analyzing exigent circumstances. It is appropriate that we resolve that confusion here.

Blancas argued that the reason a magistrate is unavailable should be the preeminent factor in determining whether an exigency exists. This argument is understandable in light of *Chernobieff I* but is inconsistent with established law. In *Chernobieff I*, the defendant's blood was drawn after multiple failed attempts to reach an on-call magistrate. 161 Idaho at 541, 387 P.3d at 794. After conducting an exigency analysis, we expressed our concern about the magistrate's unavailability and stated, "[w]hen an on-call magistrate is unable to be reached by law enforcement, the State has the burden of showing why that is the case and that good cause exists for the unavailability." *Id.*

By this statement, we implied that the reason for a magistrate's unavailability is part of the exigency analysis. This is not consistent with the exigency exception's two-element test. The exigency exception applies if the facts known to a reasonable officer indicate (1) there is a compelling need for immediate action, and (2) there is no time to obtain a warrant. Under this test, an officer can believe that an exigency exists whether he is aware of a good reason for a magistrate's unavailability, is aware of a bad reason, or is not aware of any reason at all. As we said above, what matters is *whether* exigent circumstances exist, not *why* they have come about. In this case, we have little trouble concluding that attendance at a judicial conference in another part of the state is not good cause for unavailability. But if the State had proven, for example, that the magistrate had been unavailable due to a sudden illness, that fact alone would not have made the need to draw Blancas' blood any more exigent.

That said, where an avoidable exigency is brought about by the state's actions or omissions, an exception to the application of the exigent circumstances doctrine may be warranted. In *Chernobieff II*, we disavowed the good-cause statement in *Chernobieff I* as dicta, but we reiterated our admonition that "it is the responsibility of the trial courts to provide a reliable and effective system for warrant applications 'both during regular office hours and through the night and on weekends.' " *Chernobieff II*, 168 Idaho at 104, 480 P.3d at 142 (quoting *Chernobieff I*, 161 Idaho at 541, 387 P.3d at 794). Here again, we reiterate the admonition, and we do not foreclose the possibility that the State could be barred from relying on the exigency exception where an unjustified breakdown in the warrant process creates an exigency. *Cf.*

9

*Kentucky v. King*, 563 U.S. 452, 469 (2011) (holding that the exigency exception does not apply when an exigency is created by actual or threatened violations of the Fourth Amendment by the police). However, there was no exigency under any view of the facts in this case, and we need not decide this question now.

**IV. CONCLUSION**

The district court's order denying Blancas' motion to suppress is reversed and we remand the case for further proceedings consistent with this opinion.

Justices STEGNER, MOELLER, and ZAHN, CONCUR.

BEVAN, Chief Justice, specially concurring:

I concur with the result reached by the majority and fully agree with the conclusion that "there is no need to distinguish between legitimate and illegitimate delay." But I write separately to state my view that I question whether an exigency can ever support a warrantless blood draw in circumstances like those here, based on the following regulation governing breath tests in Idaho:

> A complete breath alcohol test includes two (2) valid breath samples taken during the testing procedure and preceded by air blanks. The breath samples performed with a portable breath testing instrument should be approximately two (2) minutes apart or more. *If the subject/individual fails or refuses to provide two (2) adequate samples as requested by the operator, the test result of a single adequate sample shall be considered valid*. . . . .
>
> The operator has the discretion to end breath testing, repeat breath testing, or request a blood draw at any point during the testing process as the circumstances require (including but not limited to lack of sample correlation, lack of subject participation or cooperation, subject is incoherent or incapable of following instructions, subject incapacitation). *If a subject/individual fails or refuses to provide adequate samples as requested by the operator, the results obtained are still considered valid, provided the failure to supply the requested samples was the fault of the subject/individual and not the operator*.

IDAPA 11.03.01.014(e) and (f) (2021) (emphasis added).

The record here establishes that Blancas provided one valid sample and that the other attempts were useless based on his "playing games." When this happens, "the test result of a single adequate sample shall be considered valid." *Id*. The Court of Appeals has held that one way the State may proceed in these circumstances is to "establish that the administrative

procedures, which ensure the reliability of that test, have been met." *State v. Longhofer*, 162 Idaho 525, 528, 399 P.3d 852, 855 (Ct. App. 2017). "As part of this first option, the State can show that a state agency approved the equipment and an officer operated the equipment and administered the test in conformity with applicable standards. . . ."

From the record before us these criteria were met, so there was no requirement[1] that the State secure Blancas' blood sample to proceed with a DUI case against him. The case against him may properly proceed to trial on remand based on the one valid breath test result Sergeant Elverud obtained. As a result, no exigency existed here that would provide an exception to the requirements of the Fourth Amendment.

That said, if an exigency truly were established by the facts here, I disagree with the notion that law enforcement must call some undefined number of judges to establish an exigency when an "on call" magistrate cannot be reached by telephone. As the majority notes, under the exigent circumstances' exception to the warrant requirement, a warrantless search can still be reasonable if "there is compelling need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013). But the question of "compelling need" and "no time to secure a warrant" are questions that "demand[ ] that we evaluate each case of alleged exigency based 'on its own facts and circumstances.' " *Id*. at 150 (quoting *Go–Bart Importing Co. v. United States,* 282 U.S. 344, 357 (1931)). Evaluating each case on its own merit may lead to differing conclusions regarding a magistrate judge's availability. I simply write to note that there is no legal requirement I am aware of requiring an investigating officer to call every judge in a given judicial district before determining an exigency exists.

> [F]actors . . . such as the procedures in place for obtaining a warrant *or the availability of a magistrate judge*, may affect whether the police can obtain a warrant in an expeditious way and therefore may establish an exigency that permits a warrantless search. The relevant factors in determining whether a warrantless search is reasonable, including the practical problems of obtaining a warrant within a timeframe that still preserves the opportunity to obtain reliable evidence, will no doubt vary depending upon the circumstances in the case.

*McNeely*, 569 U.S. at 164 (emphasis added).

---

[1] As a former prosecutor I can understand that a better case is ensured with two valid breath samples, or by a blood sample. But the need to gather the necessary evidence for the best case possible does not create an exigency sufficient to overcome the need for a warrant under the Fourth Amendment.

The majority suggests "[b]etween magistrate and district court judges, there were numerous judicial officers serving the Seventh Judicial District when Blancas was arrested. The failure to reach a single magistrate judge—whether in three calls or more—says nothing about the availability of any of the other judicial officers Elverud could have attempted to reach."

I fully understand that it is the responsibility of the judicial department to provide a reliable and effective system for warrant applications "both during regular office hours and through the night and on weekends." *Chernobieff I*, 161 Idaho at 541, 387 P.3d at 794. But the Court in *McNeely* also talks in broad terms about the "availability of a magistrate" as a factor bearing on an exigency analysis. The following statement by the Court is instructive and pertinent to the majority's conclusion here:

> We by no means claim that telecommunications innovations have, will, or should eliminate all delay from the warrant-application process. Warrants inevitably take some time for police officers or prosecutors to complete and for magistrate judges to review. Telephonic and electronic warrants may still require officers to follow time-consuming formalities designed to create an adequate record, such as preparing a duplicate warrant before calling the magistrate judge. . . . *And improvements in communications technology do not guarantee that a magistrate judge will be available when an officer needs a warrant after making a late-night arrest.* But technological developments that enable police officers to secure warrants more quickly, and do so without undermining the neutral magistrate judge's essential role as a check on police discretion, are relevant to an assessment of exigency. That is particularly so in this context, where BAC evidence is lost gradually and relatively predictably.

> Of course, there are important countervailing concerns. While experts can work backwards from the BAC at the time the sample was taken to determine the BAC at the time of the alleged offense, longer intervals may raise questions about the accuracy of the calculation. For that reason, *exigent circumstances justifying a warrantless blood sample may arise in the regular course of law enforcement due to delays from the warrant application process.*

569 U.S. at 155–56 (emphasis added) (citation omitted). These countervailing concerns are "important" here, and warrant consideration in the totality of the circumstances analysis.

The delay Sergeant Elverud encountered is one that arose in the regular course of the law enforcement process, and not due to anything for which the Sergeant was responsible. He did as he was aware, called the "on call" magistrate judge three times, never got an answer, and was advised by a prosecutor with presumed knowledge of the local situation and any required "policies," to proceed with the blood draw under the exigent circumstances exception. For that reason, we, as "a reviewing court should take care both to review findings of historical fact only

12

for clear error and . . . give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *State v. Munoz*, 149 Idaho 121, 127, 233 P.3d 52, 58 (2010). The Sergeant knew enough to call the on call magistrate; he knew nothing, apparently, about engaging in an exercise of calling other sitting magistrate and district judges in the judicial district until he got someone to answer the phone.

The majority's conclusion speculates that if Elverud had endeavored to reach another judge, "the facts suggest he would have been successful." Presumably the facts supporting this speculation arise from the opinion's next statement that "[i]t took little more than a minute for Elverud to obtain from a dispatch operator the personal cell phone and home phone numbers for the magistrate judge he attempted to call. Nothing suggests that dispatch would not have had similar information readily available for other judges." To the contrary, nothing supports the majority's assumption that it would. Even if dispatch had access to that information, the majority provides no clarification for how it would determine what judge to contact and in what order. Would dispatch go alphabetically down a list? Would dispatch select a judge at random?

The record before us lacks any policy governing these questions in Bonneville County or in the Seventh Judicial District as a whole. The majority oversteps by suggesting Elverud should have followed a procedure that does not appear to exist. The implication that an officer has to spend time calling several magistrates and even district judges is well beyond the pale of what the Constitution, even in a technologically advanced society in 2022, requires.

Thus, despite the majority's suggestion that if Elverud had been more persistent he would have succeeded in reaching a magistrate or district judge, there is no sign that any judge would have had their phone on or answered an unexpected call at 2:57 am. As far as Elverud was aware, there were no procedures in place to contact another magistrate if the on-call magistrate was unavailable. Elverud followed that procedure and could not reach the on-call magistrate. Having done so, and without anything in the record on the availability of other judges other than the Court's assumption, I would hold (again, assuming that an exigent circumstances analysis is appropriate) that the exigent circumstances exception to the warrant requirement, if necessary, was met in this case.

13